**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 00-20889
_____

ELLEN LAIN,

Plaintiff-Appellee,

versus

UNUM LIFE INSURANCE COMPANY OF
AMERICA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

January 29, 2002

Before BARKSDALE and STEWART, Circuit Judges, and ROSENTHAL, District Judge.[*]

CARL E. STEWART, Circuit Judge:

UNUM Life Insurance Company of America ("UNUM") appeals the district court's award

of disability benefits and attorneys' fees to Ellen Lain ("Lain"). For the reasons stated below, we

affirm.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

Lain is a former partner in the law firm of Schlanger, Mills, Macer & Grossberg ("Schlanger")

in Houston, Texas. She specialized in real estate, banking, and finance law. In late 1993, Lain began

to suffer severe chest pains and on November 19, 1993, she sought treatment from Dr. John M.

---

[*]District Judge of the Southern District of Texas, sitting by designation.

Bergland ("Bergland"), an internist. In January of 1994, Bergland, noting that Lain was having chest problems day and night, prescribed Inderol, which Lain contends did not alleviate her chest pains. The following month, Lain consulted Dr. Patrick Cook ("Cook"), a cardiologist. Cook reported that Lain's chest pains had progressed and could last from seconds to hours. Shortly thereafter, on March 3, 1994, Lain consulted Dr. Philip Bentlif ("Bentlif"), a gastroenterologist, who administered an endoscopy of Lain's esophagus. The test revealed that Lain's esophagus had normal epithelium (i.e., the lining of her esophagus appeared normal and not damaged by stomach acid), but her esophagus had disordered motility.[2]  Thus, Bentlif recommend a esophageal motility study.

On March 15, 1994, Dr. F. J. Garcia-Tores ("Garcia-Tores") conducted a esophageal motility study on Lain at St. Luke's Episcopal Hospital in Houston. Garcia-Tores reported that the motility study was normal, but that Lain's peristaltic contractions were "top normal" with an amplitude of 175 mm Hg and several of the contractions were greater than 220 mm HG.[3]

In April of 1994, Lain visited Dr. Ira Klein ("Klein"), another specialist in gastroenology interology. Klein, finding that Lain suffered from severe chest pains, prescribed Procardia and Tofranil. Subsequently, Klein discontinued the use of Procardia, because Lain believed it was making her symptoms worse, and increased her dosage of Tofranil. On August 16, 1994, Lain returned to Bentlif, who, after reviewing the results of the esophageal motility test, diagnosed her condition as

---

[2]Esophageal motility are the muscular contractions of the esophagus and the study of these contractions. Esophageal motility disorder is a condition that produces symptoms and discomfort to patients sometimes caused by the partial or total failure of synchronous esophageal muscular contractions. This disorder is rare and there is no known cure.

[3]Peristalsis is a contractual wave that moves food from the upstream part of the esophagus to the downstream part of the esophagus. A peristaltic wave of 150 to 180 mm HG is normal, anything greater than 180 mm Hg is considered abnormal.

esophageal motor dysfunction, a form of esophageal motility disorder, and prescribed Valium and Nitrostat.

By November 10, 1994, Lain's condition had progressed and she complained that the medication prescribed was not effective. As a result, Lain visited the Mayo Clinic in Rochester, Minnesota where she was examined by Dr. Michael D. O'Brien ("O'Brien") and Dr. R. W. Hughes ("Hughes"). They discovered that Lain also suffered from hiatal hernia and prescribed Prilosec. On April 26, 1995, Bentlif diagnosed Lain with Zenker's diverticulum[4] and gastroesophageal reflux disease ("GERD"). He then started Lain on an anti-reflux program, including a prescription for Axid. The following month, Lain contacted Bentlif and reported that the Axid was not effective.

In July of 1995, Lain visited Dr. A. David Axelrad ("Axelrad"), a psychiatrist, who diagnosed her with "[p]ain disorder associated with psychological factors and general medical condition," and "Major Depressive Disorder secondary to Chronic Pain Syndrome." Axelrad prescribed Zoloft and Desyrel.

Sometime in 1988 or 1989, Schlanger selected UNUM as the firm's long-term disability insurance carrier. UNUM issued Legal Services Group Insurance Trust Policy 37700 (the "Policy") for the employees of Schlanger, effective January 1, 1989. On April 3, 1995, Lain stopped working with Schlanger due to her deteriorating condition, and on July 12, 1995, she filed a disability claim under the Policy. Lain alleged that she was unable to work due to severe chest pains, esophagus motility disorder, and esophagal spasms.

Along with her claim, Lain submitted a physician statement written by Bentlif, which stated: (1) Lain's symptoms were substernal pain; (2) his objective findings were esophageal motility disorder

_____

[4]Zenker's diverticulum is a weakness in the back wall of the pharynx.

3

and G-E Reflux; (3) the symptoms first appeared in late 1993; (4) Bentlif had first seen Lain on March 3, 1994; (5) he believed that Lain was first unable to work on April 3, 1995; (6) Lain saw him every two to three months; (7) Lain's medical condition was such that she could not do normal legal professional work; and (8) his prognosis for recovery was "hopeful after a period of time." Lain also submitted a statement from Schlanger stating that Lain stopped work on April 3, 1995 due to illness.[5]

Steven Feagon ("Feagon"), one of UNUM's staff physicians, reviewed Lain's file. Feagon reported that "[g]iven what [UNUM had], [he could] neither validate nor refute the claimant's subjective pain complaints though the consistency across multiple providers and the presentation of pyscho[logical] eval[uations] suggest a real ongoing problem." Feagon also stated that he did not believe UNUM would be able to refute, with an independent examination, the findings of Bentlif and Axelrad regarding Lain's impairment. Id.

Nonetheless, on November 30, 1995, UNUM denied Lain's claim. It gave four reasons for the denial: (1) the doctors' description of her restrictions and limitations was insufficient to support a finding of disability; (2) Lain was able to retain bodily nourishment, and she had not produced any evidence of persistent anemia; (3) she had not been receiving regular ongoing treatment for her condition; and (4) there was no evidence of a severe mental condition that would have prevented her from performing her job duties at the time she stopped working.

On December 7, 1996, Lain received notice of the denial of her claim. Because UNUM acted as both the insurer and the Employee Retirement Income Security Act ("ERISA") administrator of the Policy, Lain sent a letter to UNUM appealing the decision. Thereafter, Carolyn Jackson

---

[5]Schlanger also reported to UNUM that Lain's job could not have been modified to accommodate her disability.

4

("Jackson"), another one of UNUM's staff physicians, reviewed Lain's file and determined that Lain's "intermittent symptoms" were not frequent or severe enough to prevent her from working. On February 14, 1996, the day after Jackson made her recommendation, UNUM sent a letter to Lain rejecting her appeal. However, UNUM stated that it would submit Lain's file to UNUM's home office for further review. After Lain's file was reviewed for the third time, UNUM finally denied her appeal for the following reasons: (1) the medical restrictions assigned to her did not support disability; (2) the objective test results performed by Bentlif and the Mayo Clinic were normal; and (3) Lain was not under psychiatric care when she ceased active employment.

Lain filed suit against UNUM in state court and UNUM removed the action to federal district court asserting that ERISA preempted Lain's state law claims. It also filed a counterclaim for attorneys' fees. Thereafter, Lain filed an amended complaint asserting seven causes of action: (1) breach of contract, (2) equitable or promissory estoppel, (3) common-law fraud and intentional misrepresentation, (4) violation of the Texas Deceptive Trade Practices Act, (5) violation of article 21.21 of the Texas Insurance Code, (6) breach of fiduciary duty and duty of good faith and fair dealing, and (7) in the event that her claims are preempted, she asserted denial of benefits and breach of fiduciary duty under ERISA.

Subsequently, Lain filed a motion for partial summary judgment asking the district court to declare that ERISA did not preempt her state-law claims against UNUM and UNUM filed a motion to strike Lain's jury demand. The district court found that Lain's state law claims related to an ERISA-regulated plan and were therefore preempted. It also denied Lain's demand for trial by jury. At the conclusion of trial, the district court held that Lain was disabled within the meaning of the Policy and awarded benefits from April 3, 1995 to the date of final judgment. The district court also

5

awarded Lain attorneys' fees.[6]  This appeal followed.

## STANDARD OF REVIEW

An administrator's denial of benefits under an ERISA plan is "reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989) (citation omitted).  Because the language in the Policy does not give UNUM such discretion, we apply the de novo standard of review.  However, UNUM's factual determinations during the course of Lain's benefit proceeding are reviewed for abuse of discretion. Estate of Bratton v. Nat.'l Union Fire Ins. Co. of Pittsburgh, Pa., 215 F.3d 516, 522 (5th Cir. 2000). When applying the abuse of discretion standard, "we analy[ze] whether the plan administrator acted arbitrarily or capriciously."  Sweatman v. Commercial Union Ins. Co., 39 F.3d 594, 601 (5th Cir. 1994) (quoting Salley v. E.I. DuPont de Nemours & Co., 966 F.2d 1011, 1014 (5th Cir. 1992)).  A decision is arbitrary when made "without a rational connection between the known facts and the decision or between the found facts and the evidence."  Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich., 97 F.3d 822, 828 (5th Cir. 1996).  An administrator's decision to deny benefits must be "based on evidence, even if disputable, that clearly supports the basis for its denial."  Vega v. Nat'l Life Ins. Servs., Inc., 188 F.3d 287, 299 (5th Cir. 1999).  We must find that "[w]ithout some *concrete evidence* in the administrative record that supports the denial of the claim, . . . the administrator abused its discretion."  Id. at 302 (emphasis added).

A "sliding scale" is applied to the abuse of discretion standard where it is determined that the

_____

[6]The district court ordered the parties to provide a calculation of benefits and Lain's claim for attorneys' fees.

administrator has acted under a conflict of interest. Id. at 296. "The greater the evidence of conflict on the part of the administrator, the less deferential our abuse of discretion standard will be." Id. at 297. When a minimal basis for a conflict is established, we review the decision with "only a *modicum less* deference than we otherwise would." Id. at 301 (emphasis added).

In the instant case, the district court held that UNUM had an "inherent conflict of interest" because it was both the insurer and the plan administrator, which determined whether to pay claims under the Policy. Accordingly, the district court found that UNUM's decision to deny Lain's claim was subject to a "modicum less deference."[7] Id. UNUM argues that the district court erred in allowing UNUM only "a moderate or medium amount of deference on the sliding scale." We are not required to apply the Vega "sliding scale" analysis to this case because we agree with the district court that "[g]iven the overwhelming evidence of . . . Lain's disability . . . and the absence of any 'concrete' evidence to the contrary, the decision in this case would not be different even if UNUM's factual determination[s] were entitled to all but 'a modicum' of deference."

A district court's determination of whether an administrator abused its discretion in denying a claim for benefits is reviewed de novo. Bellaire Gen. Hosp., 97 F.3d at 829. However, this Court "will set aside the district court's factual findings underlying its review of the [policy] administrator's determination only if clearly erroneous." Id. (citation omitted). The district court has discretion to allow reasonable attorneys' fees and court costs to either party under 29 U.S.C. § 1132(g)(1). "Such an award [of attorneys' fees and costs] is purely discretionary, and we review the district court's

---

[7]The district court also stated, in support of sliding the scale, that UNUM infused its inherent, institutional conflict of interest into its employees by providing substantial financial bonus incentives based partially on UNUM's financial achievement and its net earnings per share. UNUM argues that the fact that employee benefits are "tied indirectly and only in part to the overall performance of the company does not warrant heightened review."

7

decision only for an abuse of discretion." <u>Salley v. E.I. DuPont de Nemours & Co.</u>, 966 F.2d 1011, 1016-17 (5th Cir. 1992) (citing <u>Donovan v. Cunningham</u>, 716 F.2d 1455, 1475 (5th Cir. 1983)).

DISCUSSION

I.      Disability

In assessing whether to grant or deny benefits, an administrator must make two determinations. First, he must determine the facts underlying the claim presented and then he must determine whether the facts establish a claim to be honored under the terms of the policy. <u>Schadler v. Anthem Life Ins. Co.</u>, 147 F.3d 388, 394 (5th Cir. 1998). In the instant case, UNUM argues that, based on the established facts, Lain is not disabled as defined under the Policy.

The Policy provides

"Disability" and "disabled" mean that because of injury or sickness:

2.      [the insured] cannot perform *each* of the material duties of [her] regular occupation; or

3.      [the insured], while unable to perform all of the material duties of [her] regular occupation on a full-time basis, [is]:

   a.      performing at least one of the material duties of [her] regular occupation or another occupation on a part-time or full-time basis; and

   b.      earning currently at least 20% less per month than [her] indexed pre-disability earnings due to that same sickness or injury.

Note: For attorneys, "regular occupation" means the speciality in the practice of law which [the insured was] practicing just prior to the date the disability started. (emphasis added).

UNUM asserts that Lain is not disabled under the first-prong of the definition of disability because she has failed to present any evidence that she was unable to perform *all* of her material

duties as an attorney.[8]   There is no dispute that Lain attempted to practice law while she sought treatment. Lain initially began seeking treatment in November of 1993, but did not completely stop working until April 4, 1995. UNUM avers that there is no better evidence that Lain was able to perform at least one or more of her material duties than the fact that she worked while undergoing treatment for chest pains.

Further, UNUM maintains that there is a complete absence in the record of any objective medical evidence of an illness rendering Lain unable to practice law in her specialized field. It notes that Lain was tested extensively, but all of the tests were essentially normal. Accordingly, UNUM concludes that Lain is not disabled under the definition set forth in the Policy and the district court erred in awarding her benefits.

This Circuit applies a two-prong test when reviewing an administrator's denial of benefits. First, we determine the "legally correct interpretation of the [policy]." Tolson v. Avondale Industr., Inc., 141 F.3d 604, 608 (5th Cir. 1998). If it is found that the administrator failed to give the plan "the legally correct interpretation, [this Court must] then determine whether the administrator's decision was an abuse of discretion." Id.

A.     The Legally Correct Interpretation

In ascertaining the legally correct interpretation of the policy, we must consider (1) whether a uniform construction of the policy has been given by the administrator, (2) whether the

_____

[8]Lain does not assert nor did the district court find that Lain was disabled under the second-prong of the definition. Although the district court did not specifically state that she was disabled under the first-prong, the language used in its finding of facts lend to this interpretation. Specifically the district court found that "Lain as of April 3, 1995, and continously since that date, could not perform *each of the material duties* of her regular occupation as an attorney specializing in transactional matters involving real estate, banking, and financial law, and therefore, she was disabled." (emphasis added).

9

interpretation is fair and reasonable, and (3) whether unanticipated costs will result from a different interpretation of the policy. Gosselink v. Am. Tel. & Tel. Inc., 272 F.3d 722, 726 (5th Cir. 2001) (citing Wildbur v. ARCO Chem. Co., 974 F.2d 631, 637-638 (5th Cir. 1992)).

In the instant case, there has been no allegation or evidence as to whether UNUM gave the Policy a uniform construction. The only potential unanticipated cost resulting from a different interpretation of the Policy would be that UNUM will have to pay benefits to Lain and possibly other employees or former employees eligible prior to early 1996.[9] The crucial issue in this case is whether UNUM's interpretation of the Policy is fair and reasonable. Under the Policy, an employee is eligible for long-term disability benefits if that employee meets the definition of "disability," which in this case means that "because of injury or sickness [the insured] cannot perform *each* of the material duties of [her] regular occupation." (emphasis added).

In a seven page letter of appeal, Lain explained that her regular occupation requires the ability to concentrate mentally for long periods of time on complex and detailed factual and legal matters involving significant real estate transactions for clients. Lain maintained that her chest pains were so severe that she was unable to concentrate, think, and act in a manner necessary to perform each of the material duties of her regular occupation. As a result of her severe chest pains, Bentlif reported that Lain's ability to work was limited and she was unable to perform normal legal work, and thus, could not practice law. Also, Axelrad documented that Lain was unable to work because of Chronic Pain Sydrome, which interfered with her cognitive activity.

In denying Lain's appeal, Bruce Dominick ("Dominick"), a senior benefit analyst at UNUM,

---

[9]In January of 1996, Schlanger terminated its long-term disability policy with UNUM.

testified that he interpreted the first-prong of the definition of "disability" as requiring Lain to be unable to perform all of her material duties before she would be considered disabled. This is contrary to the plain language of the Policy and to UNUM's interpretation of the same definition in other cases.

A fair reading of the Policy supports the view that in order to be considered disabled, an insured must be unable to perform only a single material duty of her occupation. In fact, one of UNUM's own disability benefits specialist, Gayle Harrison Bledsoe ("Bledsoe"), who reviewed Lain's claim on the first level, admitted that this is the way that the Policy is interpreted.[10] Further, UNUM has previously interpreted the policy in other cases containing a similar definition of "disability" as requiring a person to be unable to perform only a single material duty of her regular occupation before she is disabled and entitled to benefits. See also Dishman v. UNUM Life Ins. Co. of Am., No. 96-0015 JSL, 1997 WL 906146, at * 6 (C.D. Cal. May 9, 1997) (When interpreting an UNUM policy containing language similar to the language of the policy in this case, the court held that "[t]he disability and partial disability provisions of the [policy], read together, evidence the fact that an . . .

---

[10]     During Bledsoe's deposition, counsel for Lain, Paul D. Clote ("Clote"), had the following exchanges with Bledsoe: With regard to the subject of the definition of "disabled" under the policy:

CLOTE: Now, when the . . . [policy] says the insured cannot perform each of the material duties of his or her regular occupation, what that means is, if the insured can do some, but not all of the material duties, then you're disabled. Isn't that what that means?

BLEDSOE: Yes, it is. Bledsoe's Deposition at 224, lines 1-7.

CLOTE: You would agree with me wouldn't you, Ms. Bledsoe, that if there was a single duty of Ellen Lain's own occupation which she could not perform, then under the terms of the policy, she should have been declared disabled; true?

BLEDSOE: Yes. Bledsoe's Deposition at 280, lines 3-10.

11

employee is disabled if there is a single material duty of [her] occupation which [she] cannot perform.").

Furthermore, even assuming the definition is ambiguous, under Texas law it is well-settled that ambiguities in insurance policies are construed against the insurer. Jarvis Christian Coll. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 197 F.3d 742, 746 (5th Cir. 1999). Accordingly, Dominick incorrectly interpreted the terms of the Policy and held Lain to a higher standard by requiring her to prove that she was unable to perform all of the material duties of her regular occupation. Accordingly, we find that UNUM's interpretation is inconsistent with a fair reading of the policy.

B.    Abuse of Discretion

We must now determine whether UNUM's interpretation of the Policy, although legally incorrect, constitutes an abuse of discretion. An administrator's incorrect interpretation of a policy does not in itself demonstrate an abuse of discretion, however, "[w]hen [his] interpretation . . . is in direct conflict with the express language [of] a [policy], this action is a very strong indication of arbitrary and capricious behavior." Wildbur, 974 F.2d at 638 (citation omitted).

When considering whether there has been an abuse of discretion, we have identified three important factors in this analysis: (1) the plan's internal consistency under the administrator's interpretation, (2) any relevant regulations, (3) the factual background underlying the decision, and (4) any indication of lack of good faith. Id. In regard to the first and second factors, neither party has presented any evidence that the language of the Policy conflicts with other provisions of the Policy and no relevant regulations have been presented to this Court. With respect to the third factor, "[t]o find an absence of abuse of discretion, [this] court must scour the record and the pleadings for any legal basis upon which the administrator could have based [its] interpretation[]." Kennedy v. Electricians

12

Pension Plan, 954 F.2d 1116, 1124 (5th Cir. 1992).

UNUM afforded the following reasons in finally denying Lain's claim: (1) the medical restrictions assigned to her did not support disability; (2) the objective test results performed by Bentlif and the Mayo Clinic were normal; and (3) Lain was not under psychiatric care when she ceased active employment.

Bentlif was the only physician to file a statement with UNUM. In his report, Bentlif stated that he believed Lain was unable to perform "[n]ormal legal professional work" after April 3, 1995. Three months after receiving the report, UNUM, evidently not satisfied with this clear statement of Lain's restrictions, faxed Bentlif a document containing three questions. It is Bentlif's answers to these questions that UNUM heavily relied on in denying Lain's claim. To the first question, which concerned Lain's specific restrictions and limitations, Bentilf responded that Lain's physical limitations were caused by "6 to 8 chest pain[s] [a] day," which Lain asserted prevented her from practicing law. The second question stated "[p]lease provide us with specific restrictions and limitations in relation to . . . Lain's speech, driving, and eating." To this question Bentlif answered, "[s]cared to drive on freeways." UNUM maintains that a "fear of driving" is insufficient to support a finding of disability under the terms of the Policy. Viewing the administrative record in its entirety, it is clear that Lain's fear of driving on the freeway was a product of the unpredictability of her severe heart attack-like chest pains. Thus, UNUM unreasonably relied on this statement in denying Lain's claim without considering it in the context of all the relevant facts and evidence presented.

The last question stated "Lain has indicated that she spends quite a bit of time at home doing research pertaining to her diagnosis. If she is able to do this research, what is it that is preventing her from performing the duties of her regular occupation?" Bentlif simply replied, "I do not know"

13

without an explanation. It is reasonable to infer that Bentlif just did not know how to respond to such an odd question. This question unfairly equates amateur research conducted by a severely ill individual trying to find answers about her painful and incurable sickness with the kind of daily performance required of an attorney specializing in major sophisticated real estate and financial transactions. Equating these disparate activities reflects plain lack of objectivity and an abuse of discretion by UNUM.

The second and third reasons set forth by UNUM in finally denying Lain's claim also demonstrated an abuse of discretion. The second reason given by UNUM was that the objective test results performed by Bentlif and the Mayo Clinic were essentially normal. Although some of the test results were normal, Lain's peristaltic contractions tests revealed abnormal and at times "top normal" contractions. UNUM's own staff physician, Feagon, stated that the tests performed on Lain by Garcia-Tores, at St. Luke's Hospital, and O' Brien and Hughes, at the Mayo Clinic, revealed "greater than normal amplitude contractions." Feagon also determined that he "[could] neither validate nor refute the claimant's subjective pain complaints though the consistency across multiple providers and the presentations of pyscho[logical] eval[uations] suggest a real ongoing problem." In addition, the tests were administered at times when Lain was not experiencing a painful episode of spasms and not in distress, a factor ignored by UNUM. It also failed to take into account that Lain's chest pains cannot be clinically measured by tests. To focus on the tests, rather than the pain and its effect, further indicates UNUM's abuse of discretion.

The third reason given by UNUM in denying Lain benefits was that she did not seek psychiatric care prior to ceasing active employment. Although this fact is true, it has no bearing on Lain's claim because her disability was physical and not mental. Understandably, as a result of Lain's

14

deteriorating condition, she suffered from major depressive disorder secondary to chronic pain syndrome; however, severe chest pains were the cause of her disability. Accordingly, UNUM's denial on this ground further reflects an abuse of discretion rather than a fair and objective determination.

As stated previously, the policy at issue only requires "proof" that Lain is unable to perform each of the material duties of her occupation. The record contains an overwhelming amount of medical evidence supporting Lain's claim of disability. Further, there is no evidence in the administrative record and UNUM has not presented any evidence to this Court which establishes that Lain was capable of working after April 3, 1995. Thus, because there is a complete absence in the record of any "concrete evidence" supporting UNUM's determination that Lain is not disabled, the district court properly held that UNUM abused its discretion.

II.    Attorneys' Fees

When determining whether to award attorneys' fees and costs, the district court should consider the following factors: "(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' position." Iron Workers Local No. 272 v. Bowen, 624 F.2d 1255, 1266 (5th Cir. 1980). Once it is determined that the plaintiff is entitled to attorneys' fees, it is incumbent upon the district court to "utilize the lodestar method to determine the amount to be awarded." Wegner v. Standard Ins. Co., 129 F.3d 814, 822 (5th Cir. 1997). This requires the district court to assess the "reasonable number of hours expended on the litigation and the reasonable hourly

15

rates for the participating attorneys, and then multiply the two figures together to arrive at the 'lodestar.' " Id. (internal footnote and citation omitted). After applying the Bowen factors, the district court determined that Lain is entitled to attorneys' fees.

The district court then reviewed the affidavit supplied by Lain's lead counsel, Clote, detailing Lain's claim for attorneys' fees and summarizing, month by month, his legal services provided over a period of approximately three years.[11] The affidavit was supported by an exhibit in which Clote's itemized bills to Lain were evidenced, including entries specifically stating the work performed, the day each service was rendered, and the amount of time spent. Utilizing the lodestar method, the district court determined that Lain was entitled to $122, 264.02 in attorneys' fees, plus expenses and court costs in the amount of $20,040.02.

This Court has held that a district court may award attorneys' fees upon finding an abuse of discretion on the part of an administrator in denying benefits. Vega, 188 F.3d at 302. Because we have already concluded that the district court properly found that UNUM abused its discretion by holding Lain to a higher standard of proof, we affirm the district court's award of attorneys' fees.

CONCLUSION

For the reasons stated herein, we affirm the district court's award of benefits and attorneys' fees to Lain.

AFFIRMED.

---

[11]Lain's claim for attorneys' fees also consisted of reasonable and necessary legal services rendered by co-counsel, Marc Grossberg, and several other lawyers and legal assistants.

16