**Leonard J. GREENE**

v.

**SYNGENTA CROP PROTECTION, INC.**

No. Civ.A. 01–1104–A.

United States District Court, M.D. Louisiana.

June 7, 2002.

Floyd J. Falcon, Jr., Avant & Falcon, Baton Rouge, LA, for plaintiffs.

F. Barry Marionneaux, F. Charles Marionneaux, Marionneaux & Marionneaux, Plaquemine, LA, Charles B. Wolf, Philip L. Mowery, Alison J. Maki, Vedder, Price, Kaufman & Kammholz, Chicago, IL, for defendants.

## RULING ON MOTIONS

JOHN V. PARKER, District Judge.

This matter is before the court on a motion by defendant, Syngenta Crop Protection, Inc. ("Syngenta"), to dismiss or for summary judgment (doc. 3), and a cross-motion by plaintiff, Leonard J. Greene, for summary judgment (doc. 9). Both motions are opposed. Jurisdiction is based upon a federal question, 28 USC § 1331, under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. There is no need for oral argument.

As the court has examined matters outside the pleadings in reaching a ruling on this motion, the court will not consider the motion to dismiss but only the motions for summary judgment.

### Undisputed Facts

The following undisputed material facts are established by the record and are taken from the Statement of Undisputed Facts submitted by the parties. Pursuant to LR56.2M, all material facts set forth in the statement required to be served by the party moving for summary judgment are

deemed admitted, for the purposes of the motion, unless specifically denied.[1]

1. CIBA–GEIGY Corporation is a predecessor to defendant, Syngenta Crop Protection, Inc.[2]

2. Leonard J. Greene was employed by Ciba–Geigy Corporation on March 31, 1969.[3]

3. Ciba–Geigy Corporation, through its Board of Directors, adopted a "Long–Term Disability Plan for Salaried Employees of CIBA–GEIGY Corporation and Certain Affiliated Corporations" on October 28, 1971, effective March 1, 1971 ("1971 Plan").[4]

4. The 1971 Plan provides, in pertinent part, under the heading "Background":

"The Plan contained herein is a continuation and restatement of the long-term disability programs of CIBA Corporation and Geigy Chemical Corporation . . ."[5]

5. The 1971 Plan defines the term "Plan" under "Article 1—Definitions" as follows:

"1.2 'Plan'—This 'Long–Term Disability Plan for Salaried Employees of CIBA–GEIGY Corporation and Certain Affiliated Corporation'; including all modifications and amendments of this Plan hereafter made; such terms shall also include the former long-term disability plans of CIBA Corporation and Geigy Chemical Corporation."[6]

6. Leonard J. Greene became disabled on January 25, 1972. The effective date of his disability claim was July 25, 1973, and beginning on September 25, 1973 plaintiff began receiving term disability benefits pursuant to the 1971 Ciba–Geigy Corporation Long–Term Disability Plan, although CIBA–GEIGY terminated his employment effective January 1, 1973. This delay was due to the Social Security Administration's delay in awarding plaintiff a Social Security disability award. The Social Security determination ultimately related back to plaintiff becoming disabled on January 25, 1972, a time when he was a "Covered Employee" under the 1971 Plan.[7]

7. Effective January 1, 1974, the 1971 Plan was amended and restated ("1974 Plan").[8]

8. The 1974 Plan provides, in pertinent part, under the heading "Background":

"This Plan, as amended as of January 1, 1974, is a continuation and restate-

1. LR56.2M.

2. Defendant's Statement of Uncontested Material Facts, doc. 5.

3. Plaintiff's Statement of Material Facts as to which there is no Genuine Issue to be tried, doc. 10; Defendant's Response to Plaintiff's Statement of Material Facts as to which there is no Genuine Issue to be tried, doc. 22.

4. Plaintiff's Statement of Material Facts as to which there is no Genuine Issue to be tried, doc. 10; Defendant's Response to Plaintiff's Statement of Material Facts as to which there is no Genuine Issue to be tried, doc. 22.

5. Plaintiff's Statement of Material Facts as to which there is no Genuine Issue to be tried, doc. 10; Defendant's Response to Plaintiff's Statement of Material Facts as to which there is no Genuine Issue to be tried, doc. 22.

6. Plaintiff's Statement of Material Facts as to which there is no Genuine Issue to be tried, doc. 10; Defendant's Response to Plaintiff's Statement of Material Facts as to which there is no Genuine Issue to be tried, doc. 22.

7. Plaintiff's Statement of Material Facts as to which there is no Genuine Issue to be tried, doc. 10; Defendant's Response to Plaintiff's Statement of Material Facts as to which there is no Genuine Issue to be tried, doc. 22.

8. Defendant's Statement of Uncontested Material Facts, doc. 5.

ment of the Long–Term Disability Plan for Salaried Employees of CIBA–GEIGY Corporation and Certain Affiliated Corporations effective March 1, 1971, which continued and restated the long-term disability programs of CIBA Corporation and Geigy Chemical Corporation." [9]

9. The 1974 Plan continues the same definition of the term "Plan" under "Article 1—Definitions" as contained in the 1971 Plan:

"1.2 'Plan'—This 'Long–Term Disability Plan for Salaried Employees of CIBA–GEIGY Corporation and Certain Affiliated Corporations', including all modifications and amendments of this Plan hereafter made." [10]

10. The 1974 Plan contained a continuation benefit ("Continuation Benefit") that was not part of the 1971 Plan. The Continuation Benefit is a monthly benefit paid from the 1971 Plan after the individual's 1971 Plan benefits cease that replicates what the individual would have been entitled to receive under the company's pension plan had the recipient continued to accrue benefits under the pension plan while receiving 1971 Plan benefits. The Continuation Benefit is not paid from the pension plan or any other retirement plan. The provision adding the Continuation Benefit reads as follows:

"3.2 Continuation Benefit—There shall be paid to any Participant who became Totally Disabled while a Participant under this Plan and continues to be Totally Disabled at this Normal Retirement Date a Continuation Benefit commencing on the first day of the month after he reaches his Normal Retirement Date and continuing until the first day of the month in which he shall die; provided, however, that such Continuation Benefit shall be paid to a Participant only if he has elected to defer his retirement benefits under Section 5.6 of the Company's Pension Plan for Salaried Employees until his Normal Retirement Date. If a Participant shall have elected the contingent annuitant option under the CIBA–GEIGY Pension Plan, then the Continuation Benefit payable to him hereunder shall be reduced, in the same manner as if such benefit were payable under such Pension Plan, and if the Participant's contingent annuitant shall survive him, such contingent annuitant shall be entitled to receive Continuation benefits hereunder, reduced in the same manner provided for such contingent annuitant payments under the CIBA–GEIGY Pension Plan. Payments to the contingent annuitant shall commence when contingent annuitant payments are commenced under the CIBA–GEIGY Pension Plan." [11]

11. Subsequent to September 25, 1973, Syngenta referred to plaintiff as a "disability retiree". [12]

---

9. Plaintiff's Statement of Material Facts as to which there is no Genuine Issue to be tried, doc. 10; Defendant's Response to Plaintiff's Statement of Material Facts as to which there is no Genuine Issue to be tried, doc. 22.

10. Plaintiff's Statement of Material Facts as to which there is no Genuine Issue to be tried, doc. 10; Defendant's Response to Plaintiff's Statement of Material Facts as to which there is no Genuine Issue to be tried, doc. 22.

11. Defendant's Statement of Uncontested Material Facts, doc. 5.

12. Plaintiff's Statement of Material Facts as to which there is no Genuine Issue to be tried, doc. 10; Defendant's Response to Plaintiff's Statement of Material Facts as to which there is no Genuine Issue to be tried, doc. 22.

12. Plaintiff received long-term disability benefits until he reached age 65 when Syngenta terminated his benefits effective May 1, 2001.[13]

13. While plaintiff was receiving 1971 Plan benefits, he participated in Ciba–Geigy's and its successors' retiree welfare plans. Plaintiff's benefits under the retiree welfare plans ceased when his 1971 Plan benefits ceased.[14]

14. When plaintiff's long-term disability benefits were terminated by defendant he filed a claim for payment of continuation benefits provided to him by Section 3.2 of the Plan as amended in 1974 and to be reinstated under the defendant's retiree welfare plans.[15]

15. In a letter dated April 27, 2001, defendant advised plaintiff that he was not entitled to continuation benefits.[16] The reason for the denial was that plaintiff's rights were governed by the plan document in existence when he became disabled.[17]

16. Plaintiff appealed this adverse decision of the committee which denied the appeal in a letter dated September 14, 2001.[18]

17. Plaintiff's claim for continuation benefits was the first to be before the Syngenta Corporation Benefits Committee, which came into existence in November 2000.[19]

18. Syngenta self-administers and self-funds the Plan at issue in this case. The Plan documents provide that decisions of eligibility for benefits and interpretation of the Plan are made by a Committee appointed by the Board of Directors of the company which Committee may include participants.[20]

### Arguments

In support of the motion for summary judgment, defendant submits that the Syngenta Corporation Benefits Committee ("Committee") correctly determined that plaintiff's benefits were governed by the version of the long-term disability benefits plan in existence at the time plaintiff became disabled in 1972, which does not provide the benefits plaintiff seeks. Defendant argues that, when plaintiff became disabled, he was no longer regularly in the employ of Ciba–Geigy and thus was not an "Employee" as defined in the 1974 Plan.

---

**13.** Plaintiff's Statement of Material Facts as to which there is no Genuine Issue to be tried, doc. 10; Defendant's Response to Plaintiff's Statement of Material Facts as to which there is no Genuine Issue to be tried, doc. 22.

**14.** Defendant's Statement of Uncontested Material Facts, doc. 5.

**15.** Plaintiff's Statement of Material Facts as to which there is no Genuine Issue to be tried, doc. 10; Defendant's Response to Plaintiff's Statement of Material Facts as to which there is no Genuine Issue to be tried, doc. 22; Defendant's Statement of Uncontested Material Facts, doc. 5.

**16.** Plaintiff's Statement of Material Facts as to which there is no Genuine Issue to be tried, doc. 10; Defendant's Response to Plaintiff's Statement of Material Facts as to which there is no Genuine Issue to be tried, doc. 22.

**17.** Defendant's Statement of Uncontested Material Facts, doc. 5.

**18.** Plaintiff's Statement of Material Facts as to which there is no Genuine Issue to be tried, doc. 10; Defendant's Response to Plaintiff's Statement of Material Facts as to which there is no Genuine Issue to be tried, doc. 22; Defendant's Statement of Uncontested Material Facts, doc. 5.

**19.** Plaintiff's Statement of Material Facts as to which there is no Genuine Issue to be tried, doc. 10; Defendant's Response to Plaintiff's Statement of Material Facts as to which there is no Genuine Issue to be tried, doc. 22.

**20.** Plaintiff's Statement of Material Facts as to which there is no Genuine Issue to be tried, doc. 10; Defendant's Response to Plaintiff's Statement of Material Facts as to which there is no Genuine Issue to be tried, doc. 22.

Since plaintiff was not an "Employee", he was neither a "Covered Employee" nor a "Participant" as defined in the 1974 Plan. Defendant thus argues that the Continuation Benefit in the 1974 Plan was not applicable to plaintiff. Further, defendant contests and denies that the definition of "Plan" in the 1971 and 1974 disability plans provide that future modifications and amendments automatically apply to plaintiff because he was once covered or .is receiving benefits under a particular plan. Defendant also argues that there is no indication that the Continuation Benefit was intended to be applied retroactively. Defendant argues that plaintiff's construction of the disability plans would unjustly entitle persons to the Continuation Benefit regardless of the provisions of the disability plan in place at the time of disability, and would lead to significant unanticipated costs. Finally, defendant argues that the Committee properly considered and addressed plaintiff's additional arguments on appeal, and did not abuse its discretion in determining plaintiff's appeal.

Plaintiff argues that defendant's interpretation of the disability plans is unfair and unreasonable as it is in direct contradiction with the plain language of the plans. Plaintiff argues that the 1974 Plan which added the Continuation Benefit was not a new plan, but merely a continuation and restatement of the 1971 Plan. Plaintiff argues that the 1971 Plan includes any amendments made after March 1, 1971, including the amendment adding the Continuation Benefit. Plaintiff argues that defendant's illogical interpretation that plaintiff was not an "Employee" under the 1974 Plan would require that plaintiff's benefits

terminate as of the effective date of the 1974 Plan. Plaintiff further argues that he is a "Covered Employee" under the plan, which is defined as an employee who immediately prior to his disability is paid a regular salary. Plaintiff argues that the disability plans contain no language that the continuation benefit amount was not intended to apply retroactively. Plaintiff argues that the Plan Administrator operates under a conflict of interest in this case and thus the decision is not entitled to strict deference.

In response, defendant acknowledges that the 1971 Plan and the 1974 Plan are "different versions of the same plan/entity", although they are separate plan documents. However, defendant argues that the 1974 Plan is a freestanding amendment and restatement of the long-term disability plan with specific prospective eligibility and participation requirements.

## Law and Discussion

The plan involved in this matter is an employee welfare benefit plan as defined by ERISA.[21] The claims by plaintiff are governed by ERISA because the disability plan established by Syngenta and its predecessors was established for the purpose of providing disability benefits for its employees and because the claims by plaintiff clearly "relate to" this plan, in that the claims have "a connection with or reference to such a plan."[22] In this case it is undisputed that the employee disability benefits plan at issue is an ERISA plan, and that plaintiff was a beneficiary of the plan.

**21.** 29 U.S.C. § 1002(1) defines an employee welfare benefit plan as:
"... any plan, fund, or program ... established or maintained by an employer ... to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or

their beneficiaries through the purchase of insurance or otherwise, ... benefits in the event of ... disability."

**22.** *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).

Normally, to obtain judicial review one must first exhaust administrative remedies provided for in an ERISA plan.[23] In this matter plaintiff requested review of his claim after the initial unfavorable determination. The decision to terminate benefits was affirmed. Therefore, under the circumstances of this case the plaintiff has exhausted his administrative remedies under the plan.

Summary judgment is an appropriate procedural vehicle for the resolution of a suit by an ERISA plan beneficiary.[24] Once the motion for summary judgment is filed, the usual summary judgment rules control.[25] Thus, summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[26] The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, affidavits or other factual support demonstrating that it did not abuse its discretion in rejecting the claim by the plan beneficiary. Thereafter, the nonmovant must set forth factual support in proper form tending to show that the defendant abused its discretion and is not entitled to summary judgment.[27] When all of the summary judgment evidence presented by both parties could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial and summary judgment is proper.[28]

*Standard of Review*

In evaluating the summary judgment evidence presented in an ERISA case involving a denial of benefits, the court must utilize the proper standard of review for the decision by the plan administrator. In determining whether to pay or to deny benefits, a plan administrator must make two general types of determinations: (1) the facts underlying the claim for benefits, and (2) whether those facts constitute a claim to be honored under the terms of the plan.[29] In the Fifth Circuit, the proper standard for district court review of the interpretation by the plan administrator of the provisions of the plan is a de novo standard unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan.[30] Where a plan vests the administrator with discretionary authority, the courts review the decision under the more deferential abuse of discretion standard.[31] The administrator's factual findings underlying the claim must always be reviewed for an abuse of discretion.[32]

23. See, *Medina v. Anthem Life Ins. Co.*, 983 F.2d 29 (5th Cir.1993).

24. *Barhan v. Ry–Ron Inc.*, 121 F.3d 198, 201–02 (5th Cir.1997).

25. *Id.*

26. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

27. *Barhan*, 121 F.3d at 202.

28. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

29. *Schadler v. Anthem Life Insurance Company*, 147 F.3d 388, 394 (5th Cir.1998).

30. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

31. *Bruch*, 489 U.S. at 115, 109 S.Ct. at 956–57.

32. *Schadler*, 147 F.3d at 395, *citing Pierre v. Connecticut Gen. Life Ins. Co./Life Ins. Co. of N. Am.*, 932 F.2d 1552, 1562 (5th Cir.1991).

■ The parties do not dispute that the disability plan in this case vests the Administrative Committee with discretionary authority to determine eligibility for benefits and to construe the terms of the plan.[33] Plaintiff submits, however, that since Syngenta self-administers and self-funds the long-term disability plan at issue, Syngenta has a conflict of interest in administering the plan. A "sliding scale" is applied to the abuse of discretion standard where it is determined that the administrator has acted under a conflict of interest.[34] Defendant disputes that a conflict of interest exists, in that the administrator of the plan is the Benefits Committee, and not Syngenta itself.

The 1971 Plan provides that it "... shall be administered by an Administrative Committee, which shall consist of three or more persons who shall be appointed from time to time by the Board of Directors of the Company to serve at the pleasure of said Board. Participants may be members of the Committee."[35] The 1974 Plan contains an identical provision.[36] Since the

Administrative Committee serves "at the pleasure of the Board", the court finds that a conflict of interest does exist, and the sliding scale standard shall be applied.

If the abuse of discretion standard is applicable to review of the interpretive findings by the administrator, the Court is not totally confined to the administrative record in determining whether the administrator abused its discretion in making a benefit determination.[37] The court may consider evidence of benefit determinations other than the one under scrutiny to determine how defendant has interpreted the terms of the plan in other instances.[38] However, the Court should evaluate the administrator's factual findings regarding the eligibility of a claimant based on the evidence before the administrator, assuming that both parties were given an opportunity to present facts to the administrator.'[39]

The parties do not appear to dispute the facts of this case, but only the interpretive findings by the Administrative Committee.

---

**33.** The court notes that each copy of the 1974 Plan submitted by each party does not include page 10 of the plan which lists the specific powers and duties given to the Administrative Committee. The court can only assume that the enumerated powers and duties are similar if not identical to those enumerated in the 1971 Plan.

**34.** *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287 (5th Cir.1999).

**35.** Long–Term Disability Plan for Salaried Employees of CIBA–GEIGY Corporation and Certain Affiliated Corporations, Defendant's Exhibit 1.

**36.** Long–Term Disability Plan for Salaried Employees of CIBA–GEIGY Corporation and Certain Affiliated Corporations As Amended, as of January 1, 1974, Defendant's Exhibit 2.

**37.** *Schadler*, 147 F.3d at 395, *citing*, Wildbur v. ARCO Chem. Co., 974 F.2d 631, 639 (5th Cir.), *modified on other grounds*, 979 F.2d 1013 (5th Cir.1992). Where the court must

apply the abuse of discretion standard to the administrator's interpretation of the plan, a two-step inquiry is used. The court first determines whether the administrator's interpretation of the plan is a legally correct interpretation. If so, then the inquiry ends because no abuse of discretion could have occurred. However, if the court determines that the administrator's determination is not legally correct, then it must further determine whether the administrator's decision was an abuse of discretion. *Schadler*, 147 F.3d at 395, n. 5, *citing, Spacek v. Maritime Ass'n, ILA Pension Plan*, 134 F.3d 283, 292–93 (5th Cir.1998), and *Wildbur*, 974 F.2d at 637.

**38.** *Gooden v. Provident Life & Accident Insurance Co.*, 250 F.3d 329 (5th Cir.2001).

**39.** *Schadler*, 147 F.3d at 395, n. 5, *citing Wildbur*, 974 F.2d at 639; and *Southern Farm Bureau Life Ins. Co. v. Moore*, 993 F.2d 98, 102 (5th Cir.1993).

The Fifth Circuit applies a two-prong test when reviewing an administrator's denial of benefits. First, the court must determine the legally correct interpretation of the policy.[40] If it is found that the administrator failed to give the plan the legally correct interpretation, the court must then determine whether the administrator's decision was an abuse of discretion.[41]

*The Legally Correct Interpretation*

■ In ascertaining the legally correct interpretation of the plan, the court must consider (1) whether a uniform construction of the plan has been given by the administrator, (2) whether the interpretation is fair and reasonable, and (3) whether unanticipated costs will result from a different interpretation of the plan.[42]

There is no evidence in the record regarding whether the Administrative Committee has given a uniform construction to the 1974 Plan. Further, there is no evidence other than defendant's bare assertion that unanticipated costs will result from the interpretation of the plan proposed by plaintiff. Therefore, the only inquiry concerning the legally correct interpretation of the plan is whether the Administrative Committee's interpretation is consistent with a fair and reasonable reading of the plan.

The court must consider relevant portions of the plan documents at issue. The court interprets plan provisions with, not contrary to, their plain meaning, and in a manner that does not render other provisions inoperative.[43] The "Background" provision of the 1974 plan provides that it is, "... as amended as of January 1, 1974, ... a continuation and restatement of the Long–Term Disability Plan for Salaried Employees of CIBA–GEIGY Corporation and Certain Affiliated Corporations effective March 1, 1971, which continued and restated the long-term disability programs of CIBA Corporation and Geigy Chemical Corporation."[44] The "Effective Date" of the 1974 Plan is January 1, 1974.[45] There is no indication that the provisions adding new benefits ("continuation benefit") provided in the 1974 Plan are retroactive. The continuation benefits provided for in section 3.2 of the 1974 Plan are new and have specific eligibility requirements.

The Benefits Committee denied plaintiff's claim for continuation benefits as follows:

> "You were not an 'Employee' on January 1, 1974, because you were then receiving long-term disability benefits under the 1971 LTD Plan, and were not regularly in the employ of Ciba–Geigy on that date. Because you were not an 'Employee', you were neither a 'Covered Employee' nor a 'Participant' in the 1974 LTD Plan. Thus, you are not eligible for the Continuation Benefit described in

---

**40.** *Lain v. UNUM Life Insurance Company of America,* 279 F.3d 337, 344 (5th Cir.2002), citing *Tolson v. Avondale Industr., Inc.,* 141 F.3d 604, 608 (5th Cir.1998).

**41.** *Id.*

**42.** *Lain,* 279 F.3d at 344, *citing Gosselink v. Am. Tel. & Tel. Inc.,* 272 F.3d 722, 726 (5th Cir.2001), *Wildbur,* 974 F.2d at 637–638.

**43.** *Cathey v. Dow,* 907 F.2d 554, 561 (5th Cir.1990), *cert. denied,* 498 U.S. 1087, 111 S.Ct. 964, 112 L.Ed.2d 1051 (1991); *Ramsey*

*v. Colonial Life Ins. Co. of America,* 12 F.3d 472, 478–79 (5th Cir.1994); *Wise v. El Paso Natural Gas Co.,* 986 F.2d 929, 933–34 (5th Cir.1993).

**44.** Long–Term Disability Plan for Salaried Employees of CIBA–GEIGY Corporation and Certain Affiliated Corporations As Amended, as of January 1, 1974, Defendant's Exhibit 2.

**45.** Long–Term Disability Plan for Salaried Employees of CIBA–GEIGY Corporation and Certain Affiliated Corporations As Amended, as of January 1, 1974, Defendant's Exhibit 2.

Section 3.2 of the 1974 LTD Plan. Accordingly, I must deny your claim for continuation benefit."[46]

Defendant does not dispute that the 1971 Plan and the 1974 Plan represent the same plan, and maintains that the 1971 Plan and the 1974 Plan are different versions of the same entity although separate plan documents. The court agrees.

Although there is only one benefits program, the amendment which added continuation benefits applies only to those who are employees of the company on January 1, 1974 or thereafter. The term "Participant" is defined in the 1974 Plan as "A person who at the time shall be a Participant in this Plan, in accordance with the provisions of Article II."[47] Section 2.1 of the 1974 Plan provides that "All covered employees shall be Participants under the Plan commencing on the Effective Date or the first day of the month coinciding with or next following the date of their employment with an Employing Company, whichever is later."[48]

Under the 1974 Plan, "Covered Employee" is defined in part as "An Employee who immediately prior to his Disability is paid a regular weekly, biweekly, semimonthly, monthly or annual rate of salary"; ...[49] The 1974 Plan defines "Employee" in part as:

"Any individual regularly in the employ of an Employing Company whose customary employment by the Employing Company is at least 20 hours a week for at least twelve months in a calendar year"; ...[50]

Plaintiff was not "regularly in the employ" of Syngenta on the "Effective Date" of the 1974 Plan, thus plaintiff is not an "Employee" as defined under the 1974 Plan. Plaintiff is therefore not a "Covered Employee" under the plan, nor is plaintiff a "Participant" under the Plan. Plaintiff's benefits under the 1971 Plan properly terminated when he reached age 65. The court concludes that the Administrative Committee's interpretation is consistent with a fair and reasonable reading of the plan. The inquiry by the court thus ends.

Accordingly, for the foregoing reasons, the motion by defendant, Syngenta Crop Protection, Inc. ("Syngenta"), to dismiss or for summary judgment (doc. 3) is hereby GRANTED, the cross-motion by plaintiff, Leonard J. Greene, for summary judgment (doc. 9) is hereby DENIED, and this matter shall be DISMISSED.

---

**46.** Correspondence dated April 27, 2001, to plaintiff from Stephen Mitchell on behalf of Syngenta Corporation Benefits Committee, Plaintiff's Exhibit 4.

**47.** Long–Term Disability Plan for Salaried Employees of CIBA–GEIGY Corporation and Certain Affiliated Corporations As Amended, as of January 1, 1974, Defendant's Exhibit 2.

**48.** Long–Term Disability Plan for Salaried Employees of CIBA–GEIGY Corporation and Certain Affiliated Corporations As Amended, as of January 1, 1974, Defendant's Exhibit 2.

**49.** Long–Term Disability Plan for Salaried Employees of CIBA–GEIGY Corporation and Certain Affiliated Corporations As Amended, as of January 1, 1974, Defendant's Exhibit 2.

**50.** Long–Term Disability Plan for Salaried Employees of CIBA–GEIGY Corporation and Certain Affiliated Corporations As Amended, as of January 1, 1974, Defendant's Exhibit 2.