United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 6, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 03-30361
Summary Calendar
_____

BEVERLY MOUTON,

                                        Plaintiff-Appellant,

versus

FRESENIUS MEDICAL CARE OF NORTH AMERICA,
FRESENIUS MEDICAL CARE OF NORTH AMERICA
LONG TERM DISABILITY PLAN; LIBERTY LIFE
ASSURANCE COMPANY OF BOSTON; FRESENIUS
MEDICAL CARE MEDICAL PLAN; FRESENIUS
MEDICAL CARE RETIREMENT PLAN; FRESENIUS
MECIDAL CARE DENTAL PLAN,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court for
the Middle District of Louisiana
(USDC No. 01-CV-932-D)
_____

Before REAVLEY, JOLLY and DENNIS, Circuit Judges.

PER CURIAM:*

_____

        *Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion
should not be published and is not precedent except under the limited circumstances

Beverly Mouton sued her employer, Fresenius Medical Care North American ("Fresenius"), and others under the Employee Income Retirement Security Act. See 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(3). The district court granted summary judgment for Fresenius after determining that the Claims Administrator, Liberty Mutual Life Asssurance Co. ("Liberty"), did not abuse its discretion by finding that the administrative record lacked objective medical evidence of Mouton's disability. We affirm.

1.      Mouton first argues that the decision of Liberty should be reviewed de novo. In the district court, Mouton argued for de novo review because the decision was made by the Claims Administrator, Liberty, rather than the Plan Administrator, Fresenius. The district court rejected this argument, finding that there is an express delegation of the Plan Administrator's claims adjudication and benefits determinations to a Claims Administrator, who has also been delegated authority to determine appeals of its benefits and claims decisions. See Dist. Ct. Op. at 6.

2.      On appeal, Mouton changes course and concedes that the plan gave Liberty discretionary authority to determine eligibility for benefits and to construe the

set forth in 5TH CIR. R. 47.5.4.

2

terms of the plan.  See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989) (explaining that an ERISA Plan Administrator's denial of benefits is reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.").  Mouton now claims that Liberty disclaimed that authority, and thus de novo review is proper.

3.     We do not reach this issue because we find that Mouton failed to properly raise it in the district court.  "We will not consider an issue that a party fails to raise in the district court, absent extraordinary circumstances.  Extraordinary circumstances exist when the issue involved is a pure question of law and a miscarriage of justice would result from our failure to consider it."  N. Alamo Water Supply Corp. v. City of San Juan, 90 F.3d 910, 916 (5th Cir. 1996) (footnotes omitted).  First, this is not a pure question of law, for its resolution would require the court to make a factual determination regarding whether Liberty intended to disclaim its discretionary authority.  Second, Mouton has not explained what "extraordinary circumstances" exist justifying consideration of this forfeited issue.  Thus, we decline to consider Mouton's argument and apply the abuse of discretion standard of review.

4.     Under an abuse of discretion standard of review, a Plan Administrator's

3

denial of benefits will be subject to reversal only if it is arbitrary or capricious. See Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc., 168 F.3d 211, 215 (5th Cir. 1999). It is arbitrary and capricious if the record lacks substantial evidence to support the Plan Administrator's benefit determination. See id. When determining whether a Plan Administrator abused its discretion in making a factual determination, the court examines the record before the administrator when the claim was denied. Vega v. Nat'l Life Ins. Servs., Inc., 188 F.3d 287, 299 (5th Cir. 1999).

5. Under the plan, a claimant is required to "give the employer proof in the form of objective evidence of continued: (a) Disability; and (b) required regular attendance of a Physician. The proof must be given upon the Plan's request and at the Covered Person's expense." Fresenius Plan §§ 3.1, 4.1. Liberty concluded that Mouton failed to provide such evidence. Mouton does not contend that Liberty interpreted the plan incorrectly by requiring objective medical evidence of continued disability. Thus, the question is whether it was arbitrary or capricious for Liberty to conclude that the record lacked objective medical evidence of Mouton's disability.

6. Mouton contends that Liberty's decision was an abuse of discretion "[s]ince her job required her to sit to perform most of her duties, and she couldn't sit

4

for more than 15 or 20 minutes at a time because of pain, [and thus] could not perform all of her duties." Liberty concluded that there was no evidence that sitting for more than 20 minutes at a time was a material and substantial duty of her occupation. The Physical Job Evaluation Form completed by Mouton's employer stated that Mouton's job allowed her to change positions frequently and that "[b]ecause of back problems, [the] employee is not allowed to do any lifting or prolonged sitting or typing." This statement could mean either that Mouton's employer did not require or allow Mouton to sit or type for prolonged periods, or it could mean that Mouton's physician placed restrictions on her physical activities. Liberty's interpretation of the statement—that her employer did not require or allow Mouton to sit or type for prolonged periods—was not unreasonable. Thus, it was not an abuse of discretion for Liberty to conclude that Mouton's inability to remain seated for prolonged periods did not mean she was unable to perform a material and substantial duty of her job.

7. Mouton also argues that "she met the definition of disability in 1997 and 1998, but she tried to work through the pain in the hope she would get better. She finally had to admit that she was not able to do her work, and she applied for disability." According to Liberty, however, there was a lack of medical

5

evidence supporting the worsening of Mouton's condition between 1998 and 2000. Mouton has not suggested that this evidence exists, nor does she argue that her conditions actually worsened. Instead, she contends it took her three years to realize that she was not able to do her work and that she should not be punished for working through her pain. However admirable her perseverance was, it also permits the inference that she was able to perform the material and substantial duties of her job while experiencing the level of neck and back pain she experienced in 1998. Dr. Roger G. West compared Mouton's 1998 lumbar MRI to her 2000 lumbar MRI, and concluded that the 2000 MRI showed no interval change. Additionally, Mouton's treating physician, Dr. Paul Kramm, never explained how, why, or to what extent Mouton's condition worsened during that time. The objective medical records showed no change in her back and neck condition from 1998 to 2000, and Liberty did not abuse its discretion in so concluding.

8. Mouton also argues that Liberty abused its discretion by finding that she was not disabled because she cancelled an appointment with an orthopedic surgeon to treat her frozen right shoulder and because she showed improvements in her shoulder range of motion. There was nothing arbitrary or capricious about Liberty's determination that Mouton was not disabled by

6

her shoulder pain, as the medical records indicate that her shoulder pain "resolved" between her application for short-term disability benefits and Liberty's termination of those benefits. See P.'s Ex. 7 at 43.

9. Mouton argues that Liberty abused its discretion by rejecting the expert opinion of her treating physician, Dr. Kramm, on the ground that the opinion is not supported by objective medical evidence. Specifically, she contends that Liberty ignored her disabling level of pain resulting from the myriad of her impairments, and that the court should apply Lain v. UNUM Life Insurance Co. of America, 279 F.3d 337 (5th Cir. 2002), and hold that Liberty abused its discretion.

10. Lain is distinguishable. First, the reviewing court made a de novo interpretation of the records and determined there was a conflict of interest between the plan's administrator and insurer, so that the administrator's factual determinations were given less deference than is appropriate in this case. Second, UNUM had incorrectly interpreted the plan, which the court cited as a strong indicator of arbitrary and capricious behavior. Third, Lain was given pain medication that did not work, while Mouton's records indicate a positive response to her pain prescriptions. Fourth, the administrator in Lain misrepresented the objective test results justifying its

7

denial by claiming they were normal when instead they were "abnormal" and at times "top normal." There is no suggestion that Liberty misinterpreted objective test results, as no such results existed. Thus, the Lain court's conclusion that the Plan Administrator erred by "fail[ing] to take into account that Lain's chest pains cannot be clinically measured by tests" and "focus[ing] on the tests, rather than the pain and its effect" is not controlling. Id. at 347. In Lain, UNUM's own staff physician determined that he "[could] neither validate nor refute the claimant's subjective pain complaints though the consistency across multiple providers and the presentations of pyscho[logical] eval[uations] suggest a real ongoing problem." Id. In the present case, there is no evidence of Mouton's pain in the form of objective medical testing and no medical opinions discussing the pain she experiences.

11. Mouton also argues that Liberty should have requested objective medical evidence in the form of her medical records for the records custodian at the Ochsner Clinic, where she was treated by Dr. Kramm, rather than directly from Dr. Kramm. Of course, Dr. Kramm could have forwarded any requests to the proper party at Ochsner, and he never informed Liberty that he could not secure the records or even that it would be easier if Liberty asked someone else for the records. In any event, the Plan places the burden of

obtaining the required records on the claimant. See Fresenius Plan § 3.1 (providing a claim will be paid "if the Covered Person gives the employer proof in the form of objective evidence" upon request). Thus, Dr. Kramm's failure to provide the necessary medical evidence is imputed to Mouton.

12. After reviewing the administrative record with careful attention to the medical records cited by Mouton, particularly the letter from Dr. Kramm to Liberty dated September 8, 2000, the orthopedic notes of Dr. William J. Hubbard dated April 11, 2001, and the letter from Dr. Kramm to Liberty dated May 3, 2001, we cannot say that Liberty abused its discretion by denying Mouton's claim. Liberty did not ignore Mouton's pain, but instead looked to the medical records to substantiate it. Those records lack any discussion of the level of pain Mouton experiences, and the restrictions and limitations noted therein do not suggest that Mouton could not perform her sedentary occupation. Additionally, Dr. Kramm's opinion that Mouton is disabled was conclusory and unsupported by medical testing, an explanation of how Mouton's condition deteriorated between 1998 and 2000, or a discussion of Mouton's restrictions and limitations. The administrative record does not suggest that Mouton's inability to sit for prolonged periods would render her unable to perform her sedentary job. Thus, it was not an abuse of discretion

9

for Liberty to conclude that Mouton was not disabled within the meaning of the Fresenius Plan.

AFFIRMED.