**BLUE CROSS AND BLUE SHIELD OF ALABAMA, as fiduciary for and on behalf of the Frit Industries Employees' Health Care Plan, Plaintiff,**

v.

**Rich H. COOKE, Christine Cooke, and minors Sandy Cooke and Ricky C. Cooke, Defendants.**

**No. 4:97–CV–30–H3.**

United States District Court, E.D. North Carolina, Eastern Division.

Dec. 10, 1997.

Joel M. Craig, Newsom, Graham, Hedrick & Kennon, Durham, NC, Henry A. Mitchell, III, Newsom, Graham, Hedrick & Kennon, Durham, NC, for Blue Cross and Blue Shield of Alabama.

James M. Ayers, II, New Bern, NC, for Rick H. Cooke, Christine Cooke.

Charles McMurry Williamson, Clark & James, Greenville, NC, for Sandy Cooke, Ricky C. Cooke.

Charles M. Williamson, Clark & James, Greenville, NC, pro se.

## ORDER

MALCOLM J. HOWARD, District Judge.

This matter is before the court on plaintiff's motion for summary judgment pursuant to Fed.R.Civ.P. 56. Defendants have responded, and this matter is ripe for adjudication.

## STATEMENT OF THE CASE

Plaintiff Blue cross Blue Shield of Alabama ("BCBSA") filed this action for reimbursement of funds paid to defendants from the Frit Industries Employees' Health Care Benefit Plan ("the Plan"), for which BCBSA is claims administrator.

Defendant Rick H. Cooke is an employee of Frit Industries, and Rick Cooke, his wife, Christine Cooke, and their minor children, Ricky C. and Sandy Cooke, participate in and are eligible for benefits under the Plan. All four members of the Cooke family were involved in a car crash on July 15, 1995, in which they all were seriously injured. The Plan paid the Cooke's medical bills for treatment of their injuries, which totaled $113,760.15 and consisted of $56,171.05 paid on behalf of Rick H. Cooke, $25,332.37 paid for Christine Cooke, $8,007.27 paid for Ricky C. Cooke, and $23,556.46 paid for Sandy Cooke.

In February 1996, the Cookes filed a personal injury suit in Craven County Superior Court against Kenneth Nozawa, the driver of the car with which their vehicle collided. The Cookes settled the action in June 1996 for $150,000, which was paid by Nozawa's liability carrier and the Cookes' underinsured motorist carrier. An order was entered on June 25, 1996, approving the settlement and directing that proceeds be distributed as follows: $50,000 to Rick H. Cooke, $33,000 to Christine Cooke, $50,000 to Sandy Cooke, and $17,000 to Ricky C. Cooke. The Cookes forwarded none of their settlement proceeds to the Plan.

The Plan provides that BCBSA has a right to reimbursement for monies paid to plan members if they receive additional payments from third parties, including insurance companies. (*See* Frit Industries Plan, effective 1/1/95, at 28, attached as Ex. B to Pl.'s Compl.) The portion of the Plan's terms set out under the heading "SUBROGATION," provides in relevant part:

> Blue Cross has three separate types of rights when it pays or provides plan benefits and you have rights to recover or do recover from another person or organization.... We can **subrogate**, that is, use your policy right to collect directly from the automobile insurer. If the insured has already paid you, we can use our right of **reimbursement** to collect from you what the policy pays—up to the amount of benefits we pay or provide. Either way, you will have to cooperate with us and notify us of the policy and payment so our right of **recovery** will not be harmed....

> **Right of Reimbursement**

> You will pay us the first dollars you recover from any source. This includes your own insurance company. You will pay us the amount we have paid or provided or will pay or provide in benefits. Our right to be reimbursed comes first. If others have paid for part of your loss, you will reimburse us first. If your recovery is for damages other than for health care expenses (such as pain and suffering) you will still reimburse us first. This applies to all family members including minors.

*Id.*

BCBSA learned in the fall of 1995 that the Cookes were pursuing a potential liability claim for their injuries from the July 15 collision, and sent six letters notifying the Cookes' attorney, Larry Wagner ("Wagner"), of Greenville, North Carolina, of their right to subrogation and their need for further information about the accident. Wagner failed to respond to any of these letters, and likewise ignored telephone calls and letters sent by Kimberly West, an attorney retained by BCBSA to seek reimbursement from the Cookes. BCBSA filed its complaint in the present action on February 18, 1997, and claimed it was entitled to recover $113,760.15

from the Cookes. BCBSA contends that even though Rick H. Cooke received less under the settlement distribution plan approved by the state court than he received in Plan benefits, BCBSA is entitled to joint and several liability from defendants because its Plan operates pursuant to the Employment Retirement Income Security Act ("ERISA"), which preempts state laws relating to an ERISA employee benefit plan. *See* 29 U.S.C. § 1144(a); *Hampton Indus., Inc. v. Sparrow,* 981 F.2d 726, 728–30 (4th Cir.1992). BCBSA additionally requested an award of attorney's fees and costs in bringing this action pursuant to a provision in the Plan, which states:

> If you do not notify us of suit or settlement or do not cooperate with us, or oppose us in enforcing our subrogation or reimbursement right, you agree to pay our attorneys' fees and costs incurred because of your actions or failure to act.

(Frit Industries Plan, effective 1/1/95, at 28, attached as Ex. B to Pl.'s Compl.)

BCBSA then moved for summary judgment on its claims for declaratory relief and for enforcement of the Plan's reimbursement provisions on the basis that the Plan's plain language evidences their right to reimbursement. Defendants assert that BCBSA's claim is barred by the equitable doctrine of laches, notwithstanding plaintiff's filing of the case within the statutory limitations period, and that defendants should not be held jointly and severally liable because of BCBSA's alleged failure to act in a timely manner and because, as minors, the Cooke's children have no contractual liability.

## COURT'S DISCUSSION

### I. Standard of Review

Summary judgment is appropriate pursuant to Fed.R.Civ.P. 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S.

317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, *see Anderson,* 477 U.S. at 248, 106 S.Ct. 2505 but "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (*quoting* Fed.R.Civ.P. 56(e)). Summary judgment is not a vehicle for the court to resolve disputed factual issues. *See Faircloth v. United States,* 837 F.Supp. 123, 125 (E.D.N.C.1993). Instead, a trial court reviewing a claim at the summary judgment stage should determine whether a genuine issue exists for trial. *See Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. *See Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505.

### II. Plaintiff's Motion for Summary Judgment on BCBSA's Right to Subrogation and Reimbursement

A review of the terms set out in defendants' BCBSA's health plan with Frit Industries indisputably establishes that the Cookes were obligated to turn over to BCBSA any payments they received from third parties for injuries from the July 15 accident. The terms of the contract are strikingly clear, and any doubts the Cookes or their attorney Wagner had about this contractual subrogation agreement should have been resolved by the six letters sent by BCBSA to remind them of it. The court can imagine no good-faith basis for defendants' argument that BCBSA's claim for reimbursement should be barred by the doctrine of laches because "plaintiffs [sic] sat on their hands *whilst the fires in the Craven County Courthouse burned bright.*" (*See* Defs.' Mem.Opp.Pl's Mot. Summ. J. at 5.) It appears to the court that the Cookes and their

attorney were instead sitting on letters and telephone messages from BCBSA in an attempt to avoid their obligations under the Plan. Defendants' contention that BCBSA's claim to recover funds to which it is legally entitled should be barred in equity because of their shady efforts to shield BCBSA from their settlement negotiations is ludicrous.

■ The Fourth Circuit has approved and enforced contractual rights of subrogation and reimbursement in ERISA health care benefit plans. *See, e.g., McInnis v. Provident Life & Accident Ins. Co.*, 21 F.3d 586, 590 (4th Cir.1994). The *McInnis* court explained that because the employee health plan in that case "did not undertake to be responsible ultimately for medical expenses caused by third parties, but only to advance those expenses with the expectation of reimbursement ... a state statute that would alter these benefits would impermissibly interfere in an area preempted by ERISA." *Id.* Though *McInnis* and the ERISA preemption statute, 29 U.S.C. § 1144(a),[1] address state *laws* that interfere with ERISA plans, defendant's state court judgment apportioning the personal injury awards among the Cookes also should yield to the provisions of the ERISA Plan. Otherwise, defendants would be rewarded for breaching their contractual duty to notify BCBSA of the suit and to afford BCBSA an opportunity to participate in the litigation.

■ Defendants' argument that the Cookes' minor children should not have to reimburse BCBSA for monies they received in the settlement agreement also contradicts the laws and policies governing ERISA plans. Preliminarily, the court notes that the Cookes' Plan specified that its terms applied to "all family members including minors." (Frit Industries Plan, effective 1/1/95, at 28, attached as Ex. B to Pl.'s Compl.) By accepting benefits paid by the Plan on the minors' behalf, the Cookes obligated themselves to reimburse the Plan from any third party recovery. *See Rhodes, Inc. v. Morrow*, 937 F.Supp. 1202, 1211 (M.D.N.C.1996). The

Cookes' argument that minors can only enter into contracts for necessaries under North Carolina law, that the Plan provided no necessaries to the Cooke children, and that the children are thereby relieved from any duty to reimburse the Plan is similarly without merit. As stated above, courts may determine that ERISA preempts state laws relating to ERISA benefit plans that have the potential of subjecting plan administrators to conflicting state regulations. *See* 29 U.S.C. § 1144(a); *FMC Corp. v. Holliday*, 498 U.S. 52, 59, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990); *Rhodes*, 937 F.Supp. at 1212. As the district court stated in Rhodes, applying the North Carolina necessaries doctrine "would prevent seamless administration of nationwide or multi-state plans [and would require] [p]lan administrators ... to calculate the diminished recovery that could be obtained in the event a child was injured and received payments under the ERISA plan in a state with ... the necessaries doctrine." *Rhodes*, 937 F.Supp. at 1212. This court agrees with the *Rhodes* court's determination that the necessaries doctrine was precisely the type of state law the ERISA preemption statute was designed to address, and, therefore, holds that it has no application to the Plan at issue in this case.

■ Finally, defendants argue they should be permitted to subtract the amount paid in attorney's fees to Wagner from the amount they received in settlement of their personal injury claims, thereby decreasing the amount they must pay to BCBSA as reimbursement. The plain language of the Plan says otherwise:

> You or your attorney will notify us before filing any suit or settling any claim so we may take part in the suit or settlement to protect and enforce our rights. If you do notify us before suit or settlement, we will try to retain your attorney to represent us also. If we can hire your attorney, we will agree with the attorney on the amount of attorneys fees.... If your attorney will not represent us, we will owe no part of

---

1. Section 1144(a) provides: "Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described ... [in] this title...."

your attorney's fees, nor may you subtract them from what is repaid us.

(Frit Industries Plan, effective 1/1/95, at 28, attached as Ex. B to Pl.'s Compl.)

Had the Cookes or their attorney responded to BCBSA's frequent attempts to contact them, they very likely would have been able to avoid including amounts paid in attorney's fees as part of the reimbursement owed to BCBSA. The court finds no basis in law or equity for defendants' assertion that it should ignore the plain language of the contract. Therefore, the court GRANTS BCBSA's motion for summary judgment as to their right to reimbursement from the defendants in the amount of $131,760.15.

## III. BCBSA's Request for Attorney's Fees

 The only issue remaining before the court is BCBSA's request for attorney's fees for the costs of bringing this action. Courts may in their discretion award attorney's fees to a prevailing party in an ERISA action. *See* 29 U.S.C. § 1132(g); *Martin v. Blue Cross & Blue Shield of Virginia, Inc.,* 115 F.3d 1201, 1209–10. The Court of Appeals for the Fourth Circuit has identified five factors to guide courts in determining whether such an award of attorney's fees is proper: (1) the degree of the opposing party's culpability or bad faith, (2) the ability of the opposing party to satisfy an award of attorney's fees, (3) whether an award of attorney's fees would deter other parties acting under similar circumstances, (4) whether the party requesting attorney's fees sought to benefit all ERISA plan participants in the litigation or to resolve a significant legal question about ERISA, and (5) the relative merits of the parties' positions. *See Denzler v. Questech, Inc.,* 80 F.3d 97, 103–04 (1996).

The court cannot sufficiently evaluate and weigh these factors, especially factor two, without documentation of the amount of attorney's fees and costs incurred by the plaintiff in bringing this action. Therefore, the court ORDERS plaintiff to file documentation of its claim for costs and attorney's fees within 20 days from the entry of this order.

## CONCLUSION

For the above stated reasons, the court hereby GRANTS plaintiff's motion for summary judgment, and finds that BCBSA is entitled to reimbursement from defendants in the amount of $113,760.15. The court ORDERS plaintiff to file documentation of its costs and attorney's fees within 20 days from the entry of this order.