IBEW–NECA SOUTHWESTERN HEALTH AND BENEFIT FUND and its Board of Trustees, Plaintiffs,

v.

Joseph GURULE and Sandra Gurule, both in their individual capacities, and as next friends for Alicia Cordova, a minor, Defendants.

No. Civ.A.3:03–CV–0092–L.

United States District Court,
N.D. Texas,
Dallas Division.

Aug. 18, 2004.

Mark S. Whitburn, David I. Schiller, Matthew Daniel Rinaldi, Todd A. Schroeder, Gibson, Dunn & Crutcher, Dallas, TX, for Plaintiffs.

Steven C. Henry, Law Office of Steven C. Henry, Corrales, NM, for Defendants.

## ORDER

LINDSAY, District Judge.

Before the court are the Findings, Conclusions and Recommendation of the Unit-ed States Magistrate Judge ("Report"), filed March 23, 2004; Plaintiffs' Motion to Find Steven C. Henry and Defendants in Contempt of Court, filed April 19, 2004; and Defendants' Motion to Dismiss for Lack of Jurisdiction, filed May 11, 2004. After careful consideration of the motions, responses, replies, the evidence, the Report, and the applicable law, the court **denies** Defendants' Motion to Dismiss for Lack of Jurisdiction; **denies** Plaintiffs' Motion to Find Steven C. Henry and Defendants in Contempt of Court; accepts the findings and conclusions of the magistrate judge; and **grants in part** and **denies in part** Plaintiffs' Motion for Summary Judgment, filed November 19, 2003.

## I. Background

Plaintiffs IBEW–NECA Southwestern Health and Benefit Fund (the "Plan") and its Board of Trustees (the "Trustees") (collectively, "Plaintiffs") filed this action against Defendants Joseph Gurule and Sandra Gurule, both in their individual capacities, and as next friends for Alicia Cordova ("Alicia"), a minor, pursuant to § 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1132(a)(3). The Plan is a multi-employer welfare benefit plan within the meaning of ERISA, and was established to provide health and welfare benefits to eligible employees and their dependents. The Plan is governed exclusively by ERISA, the written trust fund documents, and plan documents and their amendments. The Trustees serve as plan administrator for the Plan and a plan fiduciary. Defendant Joseph Gerule is a participant of the Plan; Defendants Sandra Gurule and Alicia are his eligible dependents.

On or about November 30, 2001,[1] Alicia was injured in an automobile accident and

1. Plaintiffs' Complaint alleges that the accident occurred on March 31, 2002; however, the record establishes that the accident occurred on November 30, 2001.

incurred medical bills as a result of her subsequent treatment. The Plan conditionally advanced $31,751.69 to Defendants to cover Alicia's medical expenses, subject to the terms of the Plan and a Reimbursement Agreement. The Reimbursement Agreement, which was executed by Defendants, provided that the Plan would receive full reimbursement of the advanced funds from any recovery by Defendants from a third person or insurance company.

Defendants subsequently recovered $46,500 in damages from a settlement with the responsible driver's insurance company, and the settlement was approved by the First Judicial District Court· in the County of Santa Fe, New Mexico. Pursuant to the terms of the Plan and Reimbursement Agreement, Plaintiffs demanded reimbursement from the settlement in the full amount advanced to Defendants for Alicia's medical expenses. Thereafter, Defendants requested that Plaintiffs consider an equitable reduction of the full reimbursement amount in accordance with New Mexico law. Plaintiffs declined to do so, and demanded full reimbursement of the approximately $31,751.69 allegedly owed by Defendants under the Reimbursement Agreement. Defendants have refused to reimburse the Plan for the funds advanced to them. for Alicia's medical expenses.

Plaintiffs filed this action against Defendants on January 15, 2003, seeking (1) a declaration that the Trustees' interpretation of the Plan terms is reasonable and, therefore, the Plan is entitled to full reimbursement from the settlement for the amount advanced to Defendants; (2) equitable restitution, reimbursement and/or recovery of the money advanced to ·Defendants; (3) specific performance to enforce the Fund terms and Reimbursement Agreement to turn over that portion of the settlement equal to $31,751.49 held in trust by Defendants; (4) imposition of a constructive trust over the $31,751.49 for the benefit of Plaintiffs; (5) a preliminary injunction enjoining Defendants from disposing, transferring, or otherwise encumbering the funds held in trust representing insurance proceeds received from the settlement;[2] .(6) prejudgment and postjudgment interest; (7) attorney's fees; and (8) all costs of enforcement and collection. Defendants do not dispute that Plaintiffs have a right to some reimbursement from the settlement; rather, they contend that the Trustees abused their discretion in interpreting the Plan and Reimbursement Agreement by not granting an equitable reduction of the amount of reimbursement pursuant to New Mexico law.

By order of August 1, 2003, the court referred this action to the magistrate judge for pretrial management. On November 19, 2003, Plaintiffs' filed a motion for summary judgment on each and every claim asserted in Plaintiffs' Original Complaint ("Complaint"). On March 23, 2004, the Findings, Conclusions & Recommendation of the United States Magistrate Judge was filed.

On April 19, 2004, Plaintiffs file a motion to find Defendants' counsel, Steven C. Henry, and Defendants in contempt of court, contending that they are in violation of the court's Preliminary Injunction Order entered on December 19, 2003. On May 11, 2004, Defendants filed a motion to dismiss, contending that the court lacks jurisdiction to award Plaintiffs the relief sought in their Complaint. The court will first address the two most recent motions filed in this action, namely: Defendants' Motion to Dismiss and Plaintiffs' Motion to Find Steven C. Henry and Defendants in Contempt of Court. The court will then proceed to address the magistrate judge's

---

**2.** By order dated December 19, 2003, the court issued a stipulated preliminary injunc-tion, enjoining disbursement of the settlement funds.

findings, conclusions and recommendation with respect to Plaintiffs' Motion for Summary Judgment.

## II. Defendants' Motion to Dismiss

Defendants contend that the court lacks subject matter jurisdiction in light of the Supreme Court's decision in *Great–West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), and the Sixth Circuit's recent decision in *Qualchoice, Inc. v. Rowland,* 367 F.3d 638 (6th Cir.2004). Specifically, Defendants argue that Plaintiffs' Complaint seeks only legal remedies; namely, to impose personal liability on them to enforce a contractual reimbursement obligation to the Plan for the amount they received in benefits, and to recover reimbursement, restitution and specific performance, which are damages at law. Defendants further argue that because Plaintiffs' lawsuit is in essence a legal action, rather than an equitable one, it is outside the scope of § 502(a)(3) and, therefore, this court lacks subject matter jurisdiction over the action. Plaintiffs counter that this is an action for equitable relief under § 502(a)(3), as they seek to recover, by way of a constructive trust and equitable reimbursement, specifically identifiable funds that are being held by Defendants' attorney in his client trust account that belong in good conscious to the Plan. Plaintiffs further contend that the Fifth Circuit has expressly recognized that a Plan's action for a constructive trust is equitable and, therefore, authorized under ERISA. The court agrees.

■ For a plan fiduciary's action to fall within § 502(a)(3)'s jurisdictional grant, it must seek recovery of (1) specifically identifiable funds, (2) that belong in good conscience to the Plan, and (3) that are within the possession and control of the defendant-beneficiary. *See Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot and Wansbrough,* 354 F.3d 348, 356 (5th Cir.2003), *reh'g en banc denied, cert. denied,* —— U.S. ——, 124 S.Ct. 2412, 158 L.Ed.2d 981 (2004). Plaintiffs have established these requirements.

■ First, the Plan seeks to recover funds from a specifically identifiable corpus of money that they had paid out previously as benefits. Second, the funds held by Defendants' attorney are clearly traceable to Defendants and in good conscience belong to Plaintiffs pursuant to the terms of the Reimbursement Agreement. Finally, the funds that Plaintiffs seek to recover are being held in the client trust account of Defendants' attorney, who is undisputably Defendants' agent. Defendants therefore have ultimate control over, and thus constructive possession of, the disputed funds. *See Bombardier,* 354 F.3d at 348. The court finds that Plaintiffs seek equitable relief in the form of a constructive trust and equitable reimbursement, and that this action is therefore authorized under ERISA. Accordingly, the court has subject matter jurisdiction over this action. *See Bombardier,* 354 F.3d at 357 (affirming district court's exercise of subject matter jurisdiction where Plan sought imposition of a constructive trust over specifically identifiable settlement funds in constructive possession of beneficiary).

Defendants' reliance on *Knudson* is misplaced, as that case is distinguishable.[3]

---

**3.** In *Knudson,* the plan administrator sought to enforce a reimbursement provision of an ERISA plan and to recover benefits paid to a beneficiary who had received settlement funds from a third-party tortfeasor. *See Knudson,* 534 U.S. at 208, 122 S.Ct. 708. The funds, however, had been placed in a Special Needs Trust for the beneficiary's medical care pursuant to California law. *Id.* at 207–08, 122 S.Ct. 708. The plan administrator argued that the relief it sought—specific performance of the reimbursement provision and restitution to the plan for benefits paid—was equitable in nature and, therefore, authorized under § 502(a)(3). The Court disagreed. In

First, unlike in *Knudson,* Plaintiffs here seek to impose a constructive trust over funds currently being held by Defendants' attorney in his client trust account. Moreover, contrary to Defendants' assertion, Plaintiffs do not seek to impose personal liability on them; rather, Plaintiffs seek a constructive trust over particular funds, separate and apart from Defendants' personal resources, and only to the extent of the benefits it provided. It is clear that Plaintiffs by this action are only seeking reimbursement of particular funds, by way of constructive trust, advanced to Defendants to pay Alicia's medical expenses.

Second, unlike the settlement proceeds in *Knudson,* the funds held by Defendants in this case are presently within their constructive possession and control. In *Knudson,* the settlement proceeds were placed in a Special Needs Trust account pursuant to California law and, therefore, outside the beneficiary's possession and control. In this case, however, the settlement proceeds are being held in a trust account by Defendants' attorney, who is an agent for Defendants. Defendants have ultimate control over, and thus constructive possession of, the disputed funds.

Likewise, Defendants reliance on *Qualchoice* is misplaced, as it is at variance with *Bombardier.* In *Qualchoice,* the Sixth Circuit held that a plan administrator's suit against a plan beneficiary for reimbursement of money received from a third-party tortfeasor was legal in nature, and not an action for "other appropriate equitable relief," notwithstanding the plan administrator's prayer for a constructive trust or equitable lien and, therefore, outside the scope of § 502(a)(3). *Bombardier* is directly on point, and since the Fifth Circuit has soundly spoken on the issue of whether this court has jurisdiction under the facts presented in this case, the court must adhere to controlling Fifth Circuit precedent.

Based on the facts of this case, the court concludes it has subject matter jurisdiction over the controversy. Accordingly, Defendants' Motion to Dismiss is **denied**.

## III. Plaintiffs' Motion for Contempt

### A. Background

On December 10, 2003, Defendants filed a Motion to Set Aside Court Approval of Settlement and to Determine Subrogation in the First Judicial District Court in the County of Santa Fe, New Mexico. The motion sought to set aside approval of the settlement entered in this action and to determine the subrogation and reimbursement claims of Plaintiffs. On December 19, 2003, this court issued a Stipulated Order Granting Preliminary Injunction,

---

distinguishing restitution in equity from restitution at law, the Court stated: "[A] plaintiff could seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.* at 213, 122 S.Ct. 708. Restitution in equity is not available, however, where "the property [sought to be recovered] or its proceeds have been dissipated so that no product remains." *Id.* In such cases, " '[the plaintiff's] claim is only that of a general creditor,' and the plaintiff 'cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant].' " *Id.* at 213–14, 122 S.Ct. 708 (internal citations omitted). The Court further explained that, "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Id.* at 214, 122 S.Ct. 708. Because the plan essentially sought "the imposition of personal liability [upon the beneficiary] for the benefits" it had conferred, the Court held that its claim was legal, rather than equitable, in nature and thus fell outside the scope of relief authorized by § 502(a)(3). *Id.; see also Bombardier,* 354 F.3d at 355 n. 29 (examining *Knudson* ).

enjoining Defendants and their counsel from "transferring, disposing of, or otherwise encumbering funds held representing insurance proceeds received from the third-party recovery." Stipulated Order Granting Preliminary Injunction at 1.

On March 23, 2004, the magistrate judge issued her findings and conclusions with respect to Plaintiffs' motion for summary judgment, and recommended that the motion be granted in part and denied in part, and that a constructive trust be imposed over the $31,751.69 held in Defendants' counsel's client trust account. On April 15, 2004, Defendants' counsel filed a second request for hearing with the New Mexico court, requesting a hearing on Defendants' previously filed motion to set aside approval of the settlement. On May 14, 2004, the New Mexico court held a hearing on Defendants' motion and issued an Order Approving Settlement and Determining Allocation of Available Fund Proceeds.

Plaintiffs now seek to have Defendants and their counsel, Mr. Steven Henry, held in civil contempt of court for allegedly violating the preliminary injunction entered on December 19, 2003, contending that Defendants have encumbered funds from the third-party recovery by petitioning the New Mexico court to set aside the underlying settlement and determine Plaintiffs' rights to the recovery. In the alternative, Plaintiffs move for a declaratory judgment that: (1) Defendants and their counsel will be in civil contempt of court if they transfer, dispose of, or otherwise encumber funds from the third-party recovery pursuant to a ruling from the New Mexico court; (2) any successful attempt by Defendants' counsel to have a state court determine subrogation or reimbursement rights to the recovery is an "encumbrance" of the funds and a violation of the December 19, 2003 preliminary injunction; and (3) either of the aforemen-

tioned violations of the December 19, 2003 preliminary injunction will be punished by holding Defendants and their counsel in civil contempt of court and awarding Plaintiffs sanctions equal to the amount of money from the recovery that is transferred, disposed of, or otherwise encumbered. Defendants counter that Plaintiffs have failed to satisfy the requirements for civil contempt, because they cannot establish that Defendants have violated the preliminary injunction.

■■■ The court may hold a party in contempt "if he violates a definite and specific court order requiring him to perform or refrain from performing a particular act or acts with knowledge of that order." *Whitfield v. Pennington*, 832 F.2d 909, 913 (5th Cir.1987), *cert. denied*, 487 U.S. 1205, 108 S.Ct. 2846, 101 L.Ed.2d 883 (1988) (citation omitted). To prevail in a civil contempt proceeding, Plaintiffs must establish by clear and convincing evidence that: (1) a court order was in effect; (2) the order required certain conduct by the Defendants and (3) Defendants failed to comply with the court's order. *See Lyn-Lea Travel Corp. v. American Airlines, Inc.*, 283 F.3d 282, 291 (5th Cir.2002); *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir.1992); *Petroleos Mexicanos v. Crawford Enters., Inc.*, 826 F.2d 392, 401 (5th Cir.1987). Intent is not an element of civil contempt; rather, the question is whether the alleged contemnors have complied with the court's order. *Whitfield*, 832 F.2d at 913.

■■■ Plaintiffs contend that Defendants and their counsel have "encumbered" the funds by seeking relief in the New Mexico court to set aside approval of the settlement and determination of the Fund and Trustees to the recovery. The court disagrees. While the court disapproves of Defendants' conduct, it cannot say that they violated the Stipulated Order Grant-

852

ing Preliminary Injunction. This is because the state court did not (1) set aside its approval of the settlement for Alicia; (2) determine any subrogation or reimbursement claims of Plaintiffs; or (3) order the funds to be transferred, disposed of, or otherwise encumbered. Instead, the state court allocated the proceeds of the $46,500 settlement as follows: (a) past and unpaid medical expenses: $2,353.27; (b) future medical expenses: $0; (c) past pain and suffering: $35,000; (d) future pain and suffering: $0; and (e) permanent physical impairment $9,146.73. Notwithstanding the state court's allocation of the settlement proceeds, the Plan's reimbursement provision states: ·

> [A]ny recovery from a third party will be applied *first* to reimburse the Plan ... *even if* the Employee or Dependent is not paid for all of his or her claim for damages against the third party, and *even if* the payment the Employee or Dependent receives is for, or is described as being for, damages other than health care expenses or covered by the Plan. This means that any third party payment will be automatically deemed to first cover the medical expenses previously paid ... by the Plan, and will not be allocated to or designated as reimbursement for any other costs or damages the Employee or Dependent may have incurred, until the Plan is reimbursed in full or otherwise made whole.

Pls.' App. at 12 (IBEW–NECA Southwestern Health and Benefit Fund Rules and Regulations § 9.10(e)). Pursuant to the unambiguous language of the Plan, Plaintiffs' right to reimbursement is protected regardless of how the settlement proceeds are allocated by the state court.

Nothing in the record indicates that Defendants have transferred, disbursed or otherwise encumbered the settlement proceeds in violation of the preliminary injunction order. Accordingly, Plaintiffs' Motion for Civil Contempt is **denied**.[4]

## IV. Plaintiffs' Motion for Summary Judgment

As previously stated, Plaintiffs' Motion for Summary Judgment was referred to the magistrate judge for hearing, if necessary, and findings and recommendation, pursuant to 28 U.S.C. § 636 and the court's Standing Order of Reference, filed August 1, 2003. The magistrate judge determined that no genuine issue of material fact exists regarding the Trustees' interpretation with respect to enforcement of the Reimbursement Agreement and Plan, and recommends that Plaintiffs' Motion for Summary Judgment be granted in part and denied in part. Neither Plaintiffs nor Defendants filed written objections to the Report.

After reviewing the findings and conclusions, the court determines them to be correct, and they are **accepted** as those of the court. Accordingly, for the reasons stated in the Report, Plaintiffs' Motion for Summary Judgment, filed November 19, 2003, is hereby **granted in part** and **denied in part**. The motion is **granted** to the extent Plaintiffs seek imposition of a constructive trust over the $31,751.69 held by Defendants and/or their counsel in a client trust account; a declaratory judgment that Plaintiffs are entitled to full reimbursement from the recovery for the

---

4. With respect to Plaintiffs' request in the alternative for declaratory relief, the court determines that no actual controversy exists with respect to this issue, as there is no evidence that Defendants have made any attempt to transfer, disburse, or otherwise encumber the settlement proceeds. Therefore, Plaintiffs' request in the alternative for declaratory relief is denied. Nothing in this order, however, prevents Plaintiffs from filing a second motion for contempt if it is later determined that Defendants have transferred, disbursed or otherwise encumbered the settlement proceeds.

benefits paid to or on behalf of Defendants as a result of the accident; and prejudgment and postjudgment interest. The motion is **denied** to the extent it seeks a declaration that all state laws are preempted "with respect to matters that relate to employee benefit plans, pursuant to 29 U.S.C. § 1144"; a declaration that Plaintiffs have "no obligation to pay claims for medical expenses" under the Plan until full reimbursement or offsets by Defendants; and attorney's fees and costs.

A constructive trust is hereby imposed over the $31,759.61 held by Defendants and/or their counsel in a client trust account. Further, Plaintiffs shall recover from Defendants, as the constructive trustees, the entire trust res of $31,759.61, and prejudgment interest at the rate of six percent (6%) per annum on that amount, calculated from October 31, 2002. Postjudgment interest shall accrue on this judgment at the rate of 1.99% per annum, compounded annually until the date the judgment is paid in full.

## V. Conclusion

For the reasons herein stated, Defendants' Motion to Dismiss for Lack of Jurisdiction is **denied**; Plaintiffs' Motion to Find Steven C. Henry and Defendants in Contempt of Court is **denied**; and Plaintiffs' Motion for Summary Judgment is **granted in part** and **denied in part**, as herein set forth. All relief not expressly granted is **denied**. The court will issue judgment by separate document pursuant to Fed.R.Civ.P. 58.

It is so ordered.

## FINDINGS, CONCLUSIONS, & REC-OMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

RAMIREZ, United States Magistrate Judge.

Before the court are *Plaintiffs' Motion for Summary Judgment,* filed November 19, 2003, *Defendants' Response to Plaintiffs' Motion for Summary Judgment,* filed February 13, 2004, and *Reply in Support of Plaintiffs' Motion for Summary Judgment,* filed February 27, 2004. The preceding filings were referred to the undersigned U.S. Magistrate Judge for hearing, if necessary, and findings and recommendation pursuant to the District Court's Standing Order of Reference, filed August 1, 2003, which referred all dispositive motions for findings and recommendation. Based on the motion, the response, the reply, the evidence submitted therewith, and the applicable law, the Court recommends that the above motion be **GRANTED** in part, and **DENIED** in part.

## I. BACKGROUND

IBEW–NECA Southwestern Health and Benefit Fund, a multi-employer welfare benefit plan and its Board of Trustees ("Trustees") (collectively "Plaintiffs") bring this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, § 502(a)(3), 29 U.S.C. §§ 1002(1) and (3), and 1132(d)(1). (Complaint ("Compl.") at 1.) The defendant Joseph Gurule is an employee covered by an ERISA-administered plan and trust fund documents ("Plan"); the defendants Sandra Gurule and Alicia Cordova are his eligible dependents (collectively "Defendants"). The Plan is administered by its Trustees in Dallas, Texas, and the Trustees serve as the Plan's fiduciary. Defendants do not dispute these facts. (Resp. at 2.)

On or about March 31, 2002, Alicia Cordova was involved in an automobile accident in which she was injured by a third person. (Compl. at 3.) Plaintiffs allege that, in order to cover Alicia Cordova's medical bills "that she otherwise would not have been entitled to," they conditionally advanced Defendants full and immediate payment of $31,751.69. *See id.* It is un-

disputed that the advance was subject to the terms of the Plan and a Reimbursement Agreement. (Resp. at 2.) The Reimbursement Agreement was signed by the Defendants and provided that the Plan would receive full reimbursement of the advanced funds from any recovery by Defendants from a third person or insurance company. (Compl. at 3.)

Defendants do not dispute that they recovered at least $ 46,500.00 in damages from a settlement with the responsible driver's insurance company, and the settlement was approved by the First Judicial District Court in the County of Sante Fe, New Mexico. (Resp. at 2–3.) Pursuant to the terms of the Plan and the Reimbursement Agreement, Plaintiffs demanded reimbursement from the settlement of the full $31,751.69 that they had advanced. (Compl. at 3.) On September 12, 2003, Defendants' counsel mailed a letter to Plaintiffs' counsel requesting an equitable reduction of the full reimbursement amount in accordance with New Mexico law. (Resp. at 4.) The letter was forwarded to the Trustees in Dallas, Texas. *See id.* In October 2002, the Trustees considered the request in light of the Plan's terms, declined to reduce the amount due, and demanded full reimbursement. (Compl. at 4; Resp. at 4.) In a letter dated October 31, 2002, Defendants' counsel was informed that the Trustees had denied the request for an equitable reduction. (Resp. at 4.)

By this suit, Plaintiffs seek declaratory judgment, full reimbursement, prejudgment and postjudgment interest, attorney's fees, and a constructive trust on the $ 31,751.49 allegedly owed under the terms of the Plan and the Reimbursement Agreement. Defendants do not dispute that Plaintiffs have a right to *some* reimbursement from the settlement. Rather, Defendants claim that the Trustees abused their discretion in interpreting the Plan

and Reimbursement Agreement by not granting an equitable reduction of the amount of reimbursement pursuant to New Mexico law. (Resp. at 3.)

## II.  ANALYSIS

### A.  Summary Judgment Standard

There are no genuine disputes about the relevant facts, only disputes about the applicable law. "Summary judgment is an appropriate mechanism for resolving issues of law arising from a materially complete factual record." *Burlington Northern and Santa Fe Ry. Co. v. Brotherhood of Maintenance of Way Employees,* 93 F.Supp.2d 751, 756 (N.D.Tex.2000). "Furthermore, disputes over the legal inferences to be gleaned from the facts in evidence will not prevent summary judgment; thus, where a non-movant merely debates the consequences flowing from admitted facts, summary judgment is proper." *Id.* "Interpretations of statutory provisions that are dispositive and which raise only questions of law, there being no contest as to the operative facts, are appropriate for summary judgment." *United States v. Miller,* 2003 WL 23109906, at *3 (N.D.Tex. Dec. 22, 2003). Because Plaintiffs are moving for summary judgment, they bear the initial burden of informing the Court of the basis for their motion and identifying those portions of the pleadings, depositions, affidavits or other factual support that demonstrate that the Trustees did not abuse their discretion in rejecting the equitable reduction claim. *See Greene v. Syngenta Crop Protection, Inc.,* 207 F.Supp.2d 537, 542 (M.D.La.2002). If Plaintiffs carry their burden, the burden shifts to Defendants to "set forth specific facts showing the existence of a genuine issue for trial." *Dubose v. Prudential Ins. Co. of America,* 85 Fed.Appx. 371, 372, 2003 WL 23021934, at *1 (5th Cir.2003) (citing FED. R. CIV. P. 56(e)). "The nonmovant cannot meet his burden with unsubstantiated assertions,

conclusional allegations, or a scintilla of evidence." *Id.* (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (*en banc*)). "When all of the summary judgment evidence presented by both parties could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial and summary judgment is proper." *Greene,* 207 F.Supp.2d at 542.

## B. Standard of Review

"In *Firestone Tire and Rubber Co. v. Bruch* [489 U.S. 101, 115 (1989)], the Supreme Court established the rule that courts must apply a *de novo* standard of review in actions brought by ERISA plan participants to challenge the denial of benefits unless the plan vests the plan administrator with discretionary authority to make eligibility determinations or construe the plan's terms." *Sunbeam–Oster Co. Group Benefits Plan v. Whitehurst,* 102 F.3d 1368, 1373 (5th Cir.1996). "When the plan so endows its administrator, the decision of the administrator must stand unless there is an abuse of discretion." *Id.* "Federal courts have consistently applied *Firestone's* deference principles to actions concerning benefit determinations brought not only by participants but also by ERISA plans and, in particular, claims involving ERISA plans' assertions of purported reimbursement and subrogation rights." *Id.* (citing *Cutting v. Jerome Foods, Inc.,* 993 F.2d 1293, 1295–96 (7th Cir.1993); *Baxter By and Through Baxter v. Lynn,* 886 F.2d 182, 187 (8th Cir.1989); *Sanders v. Scheideler,* 816 F.Supp. 1338, 1342 (W.D.Wis.1993); *Trustees of Hotel Employees and Restaurant Employees Int'l Union Welfare Fund v. Kirby,* 890 F.Supp. 939, 942 (D.Nev.1995)). In this case, both parties agree that the Trustees' interpretation of the Plan and the Reimbursement Agreement must be reviewed for an abuse of discretion. (Resp. at 3; Reply at 2.)

The "application of the abuse of discretion standard may involve a two-step process." *Spacek v. Maritime Ass'n,* 134 F.3d 283, 292 (5th Cir.1998). "The court must initially determine whether the administrator's interpretation of the plan is the legally correct interpretation." *Id.* (citing *Wildbur v. ARCO Chemical Co.,* 974 F.2d 631, 637 (5th Cir.1992), *as modified* 979 F.2d 1013 (5th Cir.1992)). "For this analysis, plan language is preeminent." *Aboul–Fetouh v. Employee Benefits Committee,* 245 F.3d 465, 472 (5th Cir.2001). "If the administrator's interpretation of the plan is legally correct, then the inquiry ends because no abuse of discretion could have occurred. However, if the court determines that the administrator's interpretation is not legally correct, then it must further determine whether the administrator's decision was an abuse of discretion." *Spacek,* 134 F.3d at 293.

## C. Legally Correct Interpretation

■ Plaintiffs argue that the Trustees correctly interpreted the Plan as providing Plaintiffs "with a first priority right of reimbursement for any and all benefits paid on Alicia's behalf[.]" If an ERISA plan's terms grant it a right to full reimbursement, the plan is unconditionally entitled to full reimbursement. *See Sunbeam–Oster,* 102 F.3d at 1376. In *Sunbeam–Oster,* the ERISA plan at issue provided for a right of full and first reimbursement.[1] *See id.* The Fifth

1. The language of that plan stated:
   The Plan has subrogation and reimbursement provisions which allow the Plan to recover for benefits it pays which are duplicated from another source ... Reimbursement gives the Plan the right to collect from you money that you receive in a settlement or lawsuit that covers expenses that the Plan has already paid for....

Circuit held that the plan was "entitled to be paid back by the beneficiary all amounts that the Plan has paid to the beneficiary, or on his behalf, to the full extent—but only to the extent—that the beneficiary recovers from another source (such as insurance purchased individually, a tortfeasor, the insurer of a tortfeasor, or the like)." *Id.* at 1375–76.

Plaintiffs contend that the language in the Plan in this case is even clearer than the language in *Sunbeam–Oster,* which the Fifth Circuit found to have provided a priority right to full reimbursement. In particular, the Plan states:

> If an Employee suffers an illness or injury where any other party (such as a third party tortfeasor, his insurance company, or even the Employee's or Dependent's own insurance company) has a legal obligation to pay for the same, then any payments from the Plan are expressly conditioned on the Employee and/or Dependent signing a legally enforceable subrogation/reimbursement agreement, containing language acceptable to the Plan.

> .    .    .    .    .

> As a part of the Plan's subrogation and reimbursement rights, **any recovery from a third party will be applied first to the reimburse the Plan** (or discharge its obligation for future payments), even if the Employee or Dependent is not paid for all of his or her claim for damages against the third party. . . . This means that any third party payments will be automatically deemed to first cover the medical expenses previously paid (or otherwise covered) by the Plan, and will not be allocated to or designated as reimbursement for any other costs or damages the Employee or Dependent may have incurred, until the Plan is reimbursed in full or otherwise made whole.

(Pl. Br. at 7) (quoting the Plan). Plaintiffs allege that the Trustees correctly interpreted the above language as providing a priority right to full reimbursement of the funds advanced to Defendants to cover Alicia Cordova's medical expenses, to the extent that Defendants received such funds from the responsible third party or his insurer. Plaintiffs contend that the Trustees' interpretation of the Plan was legally correct, and therefore, not an abuse of their discretion.

■ Plaintiffs' position is consistent with Fifth Circuit precedent. *See Sunbeam–Oster,* 102 F.3d at 1376. The plain language of the Plan clearly provides for a priority right to full reimbursement. Plaintiffs have satisfied their initial burden of informing the Court of the basis for their motion and identifying their factual support for the argument that the Trustees interpreted the Plan correctly. *See Greene,* 207 F.Supp.2d at 542. The burden now shifts to Defendants to set forth specific facts showing that there is a genuine issue of fact or law regarding Plaintiffs' interpretation of the Plan. *See Dubose,* 85 Fed.Appx. at 372.

■ Defendants do not contest that the Plan was entitled to *some* reimbursement. Rather, Defendants contend that Plaintiffs abused their discretion by failing to reduce the amount of reimbursement due pursuant to New Mexico law. (Resp. at 8.) According to Defendants, "New Mexico has long recognized that a subrogating party who is to be paid from a common fund derived through the efforts of an insured's attorney is required to share on a proportionate basis in the attorney's fees, gross receipts[,] tax[,] and costs which have been incurred." (Resp. at 7) (citing *Martinez v. St. Joseph Healthcare Sys.,* 117 N.M. 357, 871 P.2d 1363 (1994).) None of the cases cited by Defendants as supporting the application of New Mexico

law apply state law in the context of ERISA, however. *See Rosenberg v. Celotex Corp.,* 767 F.2d 197 (5th Cir.1985) (applying New York law in wrongful death action); *see also Interwest Medical Corp. v. Longterm Care Foundation of America,* 748 F.Supp. 467 (N.D.Tex.1990) (applying California law to contract claims due to a "valid choice of law provision selecting California law," and to tort claims because California had the most significant relationship).

"ERISA is silent about subrogation provisions." *Administrative Committee of Wal–Mart Associates Health and Welfare Plan v. Willard,* 302 F.Supp.2d 1267 (D.Kan.2004). "ERISA neither requires a welfare plan to contain a subrogation clause nor does it bar such clauses or otherwise regulate their content." *Id.* (quoting *Member Services Life Ins. Co. v. Am. Nat'l Bank & Trust Co. of Sapulpa,* 130 F.3d 950, 958 (10th Cir.1997)). However, case law has found that "it is well established that state subrogation doctrines are preempted under ERISA[.]" *Sunbeam–Oster,* 102 F.3d at 1374. Further, most district courts that have addressed ERISA preemption in cases involving minors have determined that ERISA preempts state anti-assignment and anti-subrogation statutes. *See, e.g., Great West Life and Annuity Ins. Co. v. Moore,* 133 F.Supp.2d 677, 680 (N.D.Ill. 2001) ("The Illinois rule which prohibits insurers from having a right of subrogation and reimbursement against a covered person when the covered person is a minor is preempted under ERISA."); *Estate of Lake v. Marten,* 946 F.Supp. 605, 610 (N.D.Ill.1996) ("Subjecting self-funded ERISA plans to various state anti-subrogation laws ... would be contrary to the purpose of ERISA's preemption clause"); *Blue Cross and Blue Shield of Alabama v. Cooke,* 3 F.Supp.2d 668, 672 (E.D.N.C. 1997) (finding that ERISA preempted North Carolina's doctrine limiting authority of parents to contract on behalf of their children for anything other than "necessaries"); *Rhodes, Inc. v. Morrow,* 937 F.Supp. 1202, 1211–12 (M.D.N.C.1996) (same); *but see Bauhaus USA, Inc. v. Copeland,* 2001 WL 1524373, at *1 (N.D.Miss. March 9, 2001) (holding that Mississippi anti-assignment law was not preempted). The Supreme Court has explained that ERISA preempts state anti-subrogation laws because requiring the "[a]pplication of differing state subrogation laws to plans would ... frustrate plan administrators' continuing obligation to calculate uniform benefit levels nationwide." *FMC Corp. v. Holliday,* 498 U.S. 52, 60, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990) (citing *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 523–26, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981) (explaining that a state statute was preempted because the statute would force employer either to structure all benefit payments in accordance with state statute or adopt different payment formulae for employers inside and outside the state)); *see also Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 9, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987) (noting that Congress sought through ERISA "to establish a uniform administration scheme" and to ensure that plan provisions would be enforced in federal court, free of "the threat of conflicting or inconsistent State and local regulation") (internal quotation marks omitted). "Requiring ERISA administrators to master the relevant laws of 50 States and to contend with litigation would undermine the congressional goal of 'minimiz[ing] the administrative and financial burden[s]' on plan administrators—burdens ultimately borne by the beneficiaries." *Egelhoff v. Egelhoff ex rel. Breiner,* 532 U.S. at 149, 150 (2001) (citing *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 142, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990)).

Defendants do not address preemption with respect to New Mexico's equitable reduction doctrine. Thus, the Court finds that Defendants have not provided specific facts showing that the Trustees' interpretation of the Plan was not legally correct. Because the Plan's clear language and ERISA law show that the Trustees' interpretation was legally correct, "the inquiry ends because no abuse of discretion could have occurred." *Spacek*, 134 F.3d at 293. Consequently, there is no genuine issue regarding the Trustees' interpretation, and summary judgment is proper with respect to enforcement of the Reimbursement Agreement and the Plan.

## C. Plaintiffs' Requested Relief

Plaintiffs seek to impose a constructive trust on the $31,751.69 at issue, obtain declaratory judgments regarding the preemptive effect of the Plan and Defendants' and Plaintiffs' obligations thereunder, and obtain prejudgment and post-judgment interest and attorney's fees and costs. Defendants do not address Plaintiffs' requested relief. Thus, the Court is permitted to accept Plaintiffs' arguments and evidence as undisputed. *See Tutton v. Garland Indep. Sch. Dist.*, 733 F.Supp. 1113, 1117 (N.D.Tex.1990).

### 1. Constructive Trust

Plaintiffs seek to impose a constructive trust over the $31,751.69 funds recovered by Defendants and currently being held by Defendants and/or their counsel in a client trust account.[2] A court may enter "a constructive trust 'where money or property identified as belonging in good conscience to the plaintiff could be clearly traced to particular funds or property in the defendant's possession.'" *Great–West Life &*

*Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 213, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), *quoted in IBEW–NECA Southwestern Health and Benefit Fund v. Douthitt,* 211 F.Supp.2d 812, 816 (N.D.Tex. 2002) (Lindsay, J.). The funds held by Defendants or their counsel in this case are clearly traceable to Defendants and in good conscience belong to Plaintiffs pursuant to the terms of the Plan and the Reimbursement Agreement. *See Douthitt,* 211 F.Supp.2d at 816. "Numerous courts have allowed plan fiduciaries to seek such relief under similar circumstances." *Id.* (citing *Great–West Life & Annuity Ins. Co. v. Brown,* 192 F.Supp.2d 1376, 1381 (M.D.Ga.2002) (permitting plan to seek restitution in equity where defendant placed settlement amount in non-interest bearing trust account); *Admin. Comm. of the Wal–Mart Stores, Inc. v. Varco,* No. 01C8277, 2002 WL 47159, *3 (N.D.Ill. Jan. 12, 2002) (permitting action against plan beneficiary to impose a constructive trust over settlement funds to avoid dissipation); *Bauer v. Gylten, No. A3–00–161, A3–02–27,* 2002 WL 664034, at *3–4 (D.N.D. April 22, 2002) (permitting plaintiffs to seek equitable restitution of funds that defendant's attorney agreed to hold in trust)).

Accordingly, the Court recommends that the $31,751.69 currently being held by Defendants and/or Defendants' counsel be placed in constructive trust for the benefit of Plaintiffs with Defendants and their counsel as constructive trustees.

### 2. Declaratory Judgment

Plaintiffs also request that the Court enter declaratory judgments on several

---

**2.** Although Defendants' appendix contains a December 10, 2003 order from the New Mexico state court directing Defendants' counsel to deposit the funds in the state court's regis-

try, the deposit never occurred. The District Court entered a stipulated preliminary injunction on December 19, 2003, enjoining disbursement of the funds.

grounds. Specifically, Plaintiffs' Complaint requests the following relief:

   2.  Enter a declaratory judgment that:

     a.  The Fund is an ERISA employee welfare benefit plan governed solely by federal law and preempting any state law with respect to all matters that relate to employee benefit plans, pursuant to 29 U.S.C. § 1144; and

     b.  The Fund is entitled to reimbursement from the Recovery for the benefits paid to or on behalf of Defendants as a result of the Accident (and wrongfully retained by Defendants) by the express terms of the Fund's Rules and Regulations and the Reimbursement Agreement.

     c.  [T]hat this Court award [Plaintiffs] costs, pre- and post-judgment interest, and attorney's fees pursuant to 29 U.S.C. § 1132(g)(1) and such other relief as the Court deems appropriate.

   3.  Enter a declaratory judgment that Plaintiffs have no obligation to pay claims for medical expenses incurred by Defendants unless and until an amount equal to the Recovery, which is owed to the Fund as herein set forth, has been paid or fully offset.

(Pl. Br. at 8.) Defendants do not address Plaintiffs'·grounds for declaratory judgment. Thus, the Court is permitted to accept Plaintiffs' arguments and evidence as undisputed. *See Tutton,* 733 F.Supp. at 1117.

Plaintiffs may assert a request for declaratory judgment to obtain "appropriate equitable relief (I) to redress [ERISA plan] violations or (ii) to **enforce** any provisions of this subchapter or the terms of the plan[.]" 29 U.S.C. § 1132(a)(3)(B) (emphasis added). There are "two instances in which 'a declaratory judgment may be said to 'enforce'... the terms of an ERISA plan'—first if the action attempts to establish 'the primacy of an ERISA obligation

over some independent, potentially conflicting state law duty,' and secondly, if the action seeks to establish 'that the party against whom it is brought' has an obligation under ERISA which it is allegedly disregarding." *KLLM, Inc. Employee Health Protection Plan v. Ontario Community Hosp.,* 947 F.Supp. 262, 266–67 (S.D.Miss.1996).

Declaratory judgment is inappropriate, however, when a fiduciary seeks to interpret or clarify an ERISA plan because " § 1132(a)(3) does not give a fiduciary the authority to file suit seeking a clarification of its rights under the plan[.]" *KLLM, Inc. Employee Health Protection Plan,* 947 F.Supp. at 266. "Numerous courts have distinguished between suits 'to enforce' an ERISA term as allowed by § 1132(a)(3) and those which seek to interpret or clarify a policy." *Id.* at 266 n. 7 (citing *Connecticut General Life Ins. Co. v. Cole,* 821 F.Supp. 193, 197 (S.D.N.Y.1993)) ("An action to clarify one's obligations as an insurer is not a suit to 'enforce' the terms of an ERISA plan"); *Reynolds v. Stahr,* 758 F.Supp. 1276, 1280 (W.D.Wis. 1991) ("the term 'enforce' does not encompass an action to determine the propriety of a denial of benefits"); *Prudential Ins. Co. v. Doe,* 76 F.3d 206, 210 (8th Cir.1996) (stating that "[defendant] may be correct that nothing in ERISA grants a fiduciary the authority to file a declaratory judgment action to interpret a policy"); and *Gulf Life Ins. Co. v. Arnold,* 809 F.2d 1520, 1523 (11th Cir.1987) (finding that § 1132(a)(3)(B)'s essential purpose is to enforce the terms of a plan and that "all [plaintiff] needed to do to enforce the terms of the plan ... is deny payment").

In this case, Plaintiffs request in paragraph "2.a." of the Complaint that the Court declare that all state laws are preempted "with respect to matters that relate to employee benefit plans, pursuant

to 29 U.S.C. § 1144[.]" (Pl. Br. at 8.) It is unnecessary for the Court to find that all state laws are preempted in order to determine the instant summary judgment motion with respect to Defendants' reimbursement obligations under the Plan. Moreover, this request may be too broad in light of ERISA's "saving clause," which exempts from preemption any state law that regulates insurance, banking or securities. *See* 29 U.S.C. § 1144(b)(2)(a). Likewise, paragraph "3." requests declaratory judgment that Plaintiffs have "no obligation to pay claims for medical expenses" under the Plan until full reimbursement or offset by Defendants. *See id.* A clarification of Plaintiffs' payment obligations under the Plan is not a proper basis for declaratory judgment. *See Connecticut General Life Ins. Co.*, 821 F.Supp. at 197 ("An action to clarify one's obligations as an insurer is not a suit to 'enforce' the terms of an ERISA plan"). Accordingly, Plaintiffs' requests for declaratory judgment in paragraphs "2.a." and "3." should be denied.

■ Paragraph "2.b." seeks to obtain a declaration that Defendants have an obligation under ERISA which they are allegedly disregarding. Thus, this is a proper basis for declaratory judgment. *See KLLM, Inc. Employee Health Protection Plan*, 947 F.Supp. at 267 (finding a request for declaratory judgment proper "if the action seeks to establish 'that the party against whom it is brought' has an obligation under ERISA which it is allegedly disregarding."). The Court has found that Defendants have an obligation according to the terms of the Plan and the Reimbursement Agreement to fully reimburse Plain-tiffs for the advanced funds. Accordingly, Plaintiffs' request for declaratory judgment in paragraph "2.b." that they are entitled to full reimbursement should be granted.

Paragraph "2.c." requests declaratory judgment for prejudgment and post-judgment interest and reasonable attorney's fees and costs pursuant to 29 U.S.C. § 1132(g)(1). Neither the Plan, the Reimbursement Agreement, the parties' briefing, ERISA, nor any other federal statute provides for an award of prejudgment interest or the rate at which such interest should be computed. However, the Fifth Circuit Court of Appeals has held that prejudgment interest should be permitted in ERISA actions. *See Hansen v. Continental Ins. Co.*, 940 F.2d 971, 983–84 (5th Cir.1991); *see also IBEW–NECA Southwestern Health and Ben. Fund v. Heritage Specialties, Inc.*, 2003 WL 21673487, at *2 (N.D.Tex. July 15, 2003) (Lindsay, J.) (computing prejudgment interest at a rate provided in the trust documents). The *Hansen* court held that a court may refer to state law for guidance in selecting an equitable rate of prejudgment interest.[3] *See Hansen*, 940 F.2d at 983–84 ("this Court holds that when awarding prejudgment interest in an action brought under ERISA, it is appropriate for the district court to look to state law for guidance in determining the rate of interest."). The Court finds that a rate of six percent per annum is an equitable rate in this case because it is the lower of the two applicable interest rates provided by New Mexico or Texas law. Accordingly, Plaintiffs' request for declaratory judgment with re-

---

**3.** Neither party has specified which state's law—New Mexico or Texas—should guide the calculation of prejudgment interest. Texas law provides for prejudgment interest on ascertainable amounts due under a contract at six percent per annum, commencing thirty days from the time the sum is due and pay-able. *See* Tex. Fin.Code Ann. § 302.002 (Vernon 1998). New Mexico law allows prejudgment interest on judgments at the rates of eight and three-quarters to fifteen percent per year, depending on the losing party's bad faith. *See* N.M.S.A. § 56–8–3 (West 1978).

spect to prejudgment interest should be granted, and prejudgment interest should be awarded at six percent per annum, calculated from October 31, 2002, the date of the Trustees' demand for full reimbursement.

ERISA does not expressly address the availability of *postjudgment interest*. The proper rate for the calculation of postjudgment interest is the rate set forth in 28 U.S.C. § 1961(a), which provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court" at the prevailing Treasury bill rate from the date of judgment. *See Heritage Specialties, Inc.*, 2003 WL 21673487, at *2 (quoting 28 U.S.C.A. § 1961(a)). "Postjudgment interest is compounded annually" according to § 1961(b). *See id.* The District Court should calculate postjudgment interest at the statutory rate posted on the date of judgment until paid in full. *See* 28 U.S.C. § 1961(a). Accordingly, Plaintiffs' request for declaratory judgment with respect to postjudgment interest should be granted. *See Heritage Specialties, Inc.*, 2003 WL 21673487, at *2.

Plaintiffs also request declaratory judgment for an award of reasonable attorney's fees and costs pursuant to 29 U.S.C. § 1132(g)(1). "The Declaratory Judgment Act permits the recovery of attorney's fees only if they are recoverable under nondeclaratory judgment circumstances." *Employers Health Ins. Co. v. Leach*, 976 F.Supp. 1062, 1067 (S.D.Tex.1997) (awarding fees for declaratory judgment in the ERISA context) (citing *Mercantile Nat'l Bank at Dallas v. Bradford Trust Co.*, 850 F.2d 215 (5th Cir.1988)).

Section 1132(g)(1) of ERISA provides: "In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). Paragraph (2) pertains to actions for recovery of delinquent contributions, which are not at issue here. *See* 29 U.S.C. § 1132(g)(2). "In determining whether to award attorney's fees and costs, courts consider the following factors: (1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy an award of attorney's fees; (3) whether an award of attorney's fees would deter other persons acting under similar circumstances; (4) whether the party requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the party's position." *Heritage Specialties, Inc.*, 2003 WL 21673487, at *2 (citing *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir.1980)). "No single factor is decisive, but a federal court should consider all of these criteria." *Id.*

■ Applying these factors to the present case, the Court determines that an award of attorney's fees is inappropriate in the present case. Defendants' efforts to reduce the amount of reimbursement on behalf of a minor do not appear to have been made in bad faith; indeed, defendants' position is supported by one case in this circuit. Further, comparison of the amount of the recovery on behalf of the minor with the amount of the reimbursement due demonstrates an ability to effectively satisfy an award of attorney's fees. This suit did not resolve a significant legal question regarding ERISA, and the participants and beneficiaries of the ERISA plan were collectively benefited only to the extent of the reimbursement, i.e., approximately $32,000.00. Accordingly, Plaintiffs request for attorney's fees and costs should be denied.

## III.   RECOMMENDATION

For the foregoing reasons, the court **RECOMMENDS** that *Plaintiffs' Motion for Summary Judgment* be **GRANTED** in part, and **DENIED** in part.

March 22, 2004.